## THOMAS H. CLAGETT, ADMINISTRATOR OF J. H. BEANES, *vs.* DAVID CRAWFORD, TRUSTEE OF MELICENT MAGRUDER. *December*, 1841.

Since the act of 1830, chap. 185, an order of the court of Chancery, which is not a final decree, nor in the nature of a final decree, does not authorise an appeal.

A preparatory order directing the auditor to state an account, with a view to a future decree, and containing various opinions and directions according to the then existing views of the Chancellor, for the guidance of the auditor, is not an adjudication of any right between parties.

Under such an order, although the auditor may report in strict compliance with the Chancellor's expressed views, still he may overrule the account, order another upon different principles, or even dismiss the proceedings if justice requires it.

Where a testator appoints a trustee, and directs a sale of his real and personal estate by him, the proceeds constitutes an aggregate of personal estate, which can only pass as such. Legacies for life, with remainder over in such cases, only entitle the tenant for life to annual interest on dividends. Per *Bland*, Chancellor.

The petitions of various legatees under such a will, in the same court, being in relation to the same subject matter, must be treated as one entire and blended course of judicial proceedings, to which such legatees are all considered as parties. Per *Bland*, Chancellor.

Where some of the co-legatees in such a case were sureties for the trustee, who sold the land and wasted the funds, and the nature and extent of their liability as sureties appeared on the record, they can receive nothing until the other co-legatees are paid in full their portions of the misapplied funds. Per *Bland*, Chancellor.

Although it is true as a general rule, that where money is directed to be invested on good security, it cannot be put out on mere personal security of any kind, yet where a testator has recognized the propriety of making an investment in stocks, bonds or other securities, any such securities as have been received by the trustee under his will, may be considered as a proper investment, unless it should appear they had been since lost by his misconduct or negligence. Per *Bland*, Chancellor.

In such case, the trustee would be held accountable as for so much money, for all mere simple contract evidences of debt below the grade of specialty securities, received by him. Per *Bland*, Chancellor.

APPEAL from the Court of Chancery.

On the 2nd July, 1833, *James A. Magruder and wife* filed their petition on the equity side of *Prince George's* county court, praying for the appointment of a trustee, to sell real

estate under the will of *William Beanes,* deceased, exhibiting
with it the will of the said *Beanes.* The trustees appointed by
the will were dead. Another trustee was appointed, who gave
bond, and reported several sales, which were ratified. The case
was then referred to the auditor, who reported accounts, and dis-
tributed the balance to *John H. Beanes* and *Melicent Magruder*
in moieties. This account was confirmed on the 14th Novem-
ber, 1835. On the 11th July, 1837, *David Crawford,* as trus-
tee of *Melicent Magruder,* filed his petition, suggesting that
she was entitled to certain sums under the said will, and re-
quiring the trustee, *John B. Brooke,* through whose hands they
were to pass, not to pay them over, except to the petitioner.
This petition was demurred to, the demurrer overruled, and
the trustee in the cause ordered to retain in his hands the
amount allowed to *J. H. Beanes,* out of the proceeds of the
property decreed to be sold until the further order of the court.
The petition was then answered by the appellant, and the
cause removed from *Prince George's* county court to the court
of Chancery, where, after various proceedings, that court
(BLAND, Chancellor,) passed the following order:

Ordered, that this cause be and the same is hereby referred
to the auditor, with directions to state an account from the
proceedings and proofs now in the case, and from such other
proofs as may be laid before him, shewing how much, if any,
of principal or interest yet remains unsatisfied or uninvested, of
the legacies due to *Melicent Magruder* and others, under the
will of *William Beanes,* deceased. The auditor will observe,
that the proceeds of the sale directed to be made by the testa-
tor of certain portions of his real and personal estate, consti-
tutes an aggregate amount of personal estate, which can only
pass as such ; and that, so considered, the bequest to *Philip
Key* passes only a life estate to him ; and thence, on the hap-
pening of the specified contingency, a similar estate to *Meli-
cent Magruder,* remainder to her children absolutely ; and
consequently those tenants for life could take no more than the
annual interest or dividends of the specified legacy. The
Chancellor conceives that his opinion accords with that which

must have been the opinion of the county court, as indicated by the decree of the 2nd July, 1833, and the order of the 11th July, 1837, confirming the auditor's report. Taking this view of these bequests, it follows, that the petition of *Philip Key*, filed on the 2nd of April, 1831; and the petition of *James A. Magruder* and wife, filed on the 2nd of April, 1833, with that of *David Crawford*, as trustee of *Melicent Magruder*, filed on the 10th of July, 1837, together with the proceeding under each of them, must necessarily be treated as one entire and blended course of judicial proceedings in the same court, in relation to the same subject, to which all who claim any portion of the sum so directed by the testator to be raised by the sale of portions of his real and personal estate, must be considered as having been, and now being parties. From all which it clearly follows, that no one of such parties can have awarded to him any thing, until he has made good all that, the safety of which he had become bound to assure to his co-distributees or co-legatees, so that neither *Philip Key*, *Colmore Beanes*, nor *John H. Beanes*, or either of their representatives, can be allowed to receive any thing, either principal or interest, until *Melicent Magruder* has obtained a full satisfaction of her share, or so much thereof as has been in any way lost by the misconduct of *James A. Magruder*, who, as trustee, must be regarded as an officer of the court, for whom *Philip Key*, *Colmore Beanes* and *John H. Beanes*, were sureties in his trustee's bond. For although an action at law might have been sustained against them on their bond, yet as it forms a part of these proceedings, and the nature and extent of their liability to *Melicent Magruder* has been thus placed upon the record, they cannot be allowed here to clear themselves from it, to her prejudice, or to the prejudice of those who may claim after her. The auditor will further observe, that although it is true as a general rule, that where money is directed to be invested on good security, it cannot be put out on mere personal security of any kind, yet here, as the testator has recognized the propriety of making an investment in stocks, bonds, or other securities, any such securities which had been received by the trustee, *James*

*A. Magruder*, may be considered as a proper investment, for which he may be allowed, unless it should appear, that they had been since lost by his misconduct or negligence; but that he is to be held accountable, as for so much money, for all mere simple contract evidences of debt, below the grade of specialty securities, which have been received by him; the order of the 10th of April, 1838, as connected with the subsequent proceedings in relation to this matter, not appearing to have been a final allowance to him of any such simple contract evidences of debt as an investment.

The parties are hereby authorised to take testimony in relation to the said account, before any justice of the peace, on giving three days notice as usual; provided, that the said testimony be taken and filed in this case in the Chancery office, on or before the first day of January next.

The administrator of *John H. Beanes*, one of the legatees, appealed to this court, where the appellee moved to dismiss the same. The motion to dismiss was argued before—

BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By J. JOHNSON for the motion, who maintained, that the order appealed from, was interlocutory merely; did not finally decide any right, and hence the appeal was premature.

By TUCK and C. C. MAGRUDER, contra.

A fund was already in court, to which the appellant was entitled by the auditor's account, ratified by the court. The appellee filed his petition, claiming that a certain demand should be satisfied out of the appellant's interest in that fund. The Chancellor passed an order for an account, in which he directs that the auditor shall assume certain principles, as established and settled, and by which the appellee was admitted to participate in the appellant's ascertained interest in the fund. The case presented two questions—1st. Whether the appellee was entitled to any portion of the fund? 2nd. To what amount he was entitled? The appellant *denied* his claim to any part

of it; and the Chancellor, in directing an account, of course determines this first question against the appellant.

The real question now before the court is, whether the order of the Chancellor does so affect the appellant's right as to give him an immediate right of appeal.

In *Thompson vs. McKim,* 6 *H. & J.* 328, this court have said, "no fixed and definite rule can well be established, but every case must in some measure depend on its own peculiar circumstances." There the main question was, whether certain money belonged to *Thompson,* or was deposited with him for certain purposes. The solution of that question involved the construction of an agreement, and the court say, "it is obvious, that a decision involving the construction of that agreement, is a decision of the whole controversy, so far as *Thompson* is concerned." And the court then go on to remark on the consequences of the order as shewing its true character, and as determining the question of the right of appeal. In the present case, if the appellee has no claim against the fund, it is a great grievance—an "irreparable injury" to the appellant to have his money tied up in court, yielding him no interest, during a long controversy; and in this respect it is like the case referred to, where the court say, "the order is to bring $70,000 into court, the use or interest of which would be lost to *Thompson,* without any benefit to the complainants, whereas the injury to *Thompson* would be irreparable, since, in no event of the cause could the interest be restored, or compensation made."

It may then be asked, where is the difference between bringing money into court, which the party ought not to bring in, and by which he will lose the use of his money, without the hope of compensation, and withholding money, already in court, from a party, and to which he is entitled, not bearing interest while in court, and by which withholding he loses the use and interest of the money, without the prospect of compensation for that loss? Will not the present appellant be as much damnified by the want of the money already distributed to him by the court, as *Thompson* was by being made to bring

his money into court? The one case deprives him of money already his own, and in possession. The other denies him that which is admitted to be his own, and to possession of which he is entitled. From the moment the auditor's report was ratified, the appellant was entitled to the $2,475.40, and to the profit he could make on it. Before he could withdraw it, the present appellee, who was no party to the original proceeding, files a petition by which he raises an issue between himself and *Beanes,* as to this very sum, and asks the court to retain it until this controversy can be settled. The appellant denies his claim altogether. The Chancellor directs an audit, and tells the auditor, in effect, to assume that the appellee has an interest in the fund, on the ground of appellant's liability, as surety " on the trustee's bond." All this time the fund yields no interest, to the " irreparable injury" of the appellant, since, in no event, could the lost interest be restored to him, or any compensation made, as the court say in 6 *H. & J.* 334.

In *Williamson vs. Carnan,* 6 *G. & J.* 215, the court entertained an appeal from an order continuing an injunction, where the party had a right to use certain land, and where the Chancellor's order " did so materially affect the right and interest of the appellant, as to bring the case within the principle of *Thompson vs. McKim;*" and the same application, in argument, was made of that case, as is here attempted. The principle extracted is this: the court will allow the appeal whereever the subsequent acts of the court cannot restore the party or indemnify him for any injury sustained by the operation of the order appealed from. The same view is recognized in *Danels vs. Tagart,* 1 *G. & J.* 321. On the question of injury by loss of interest, there can be no difference in principle between the cases. Suppose *Beanes* had withdrawn the money, and the Chancellor had directed him to bring it into court again, to await the termination of the suit.

This is not a case of mutual dealing, where something may or may not be done, and an account is indispensable to the final decree. We say the appellee has no claim. The Chancellor, in directing an account, has decided that he has a fair

claim; that the question of right is against the appellant. If upon the whole case, this court should determine that the appellee has no claim, the whole controversy will be ended, and the appellant will be entitled to the use of his money, otherwise it will remain tied up in court until the record can be sent back: the account stated, and brought here again, because the Chancellor has already decided the case against the appellant. In this case the appellant alone is interested, because the appellee will be paid, if it all, his whole demand—principal and interest—so long as the fund in court continues to be large enough for this purpose. In the productiveness of the fund, the appellee alone is concerned, and the order is therefore irreparable in its character to him alone, and not equal or mutual in its injurious consequences. The appellee's claim is bearing interest, the appellant's money in court is not.

The court should have dismissed the petition, and not put the fund (that is the appellant,) to the cost of the accounts. They were not necessary to a decree in his favor. The claim of appellee's depends on the construction of *William Beanes'* will. It is obvious, then, that any direction involving the construction of that instrument, is a decision of the whole controversy between the parties, and the same in character with *Thompson vs. McKim.*

In all the cases referred to by the appellee's counsel, the directions of the Chancellor were prefatory to the order, which is the judicial act. Here they form parts of the order itself. Every sentence of the order is—not an opinion—but a *decision* of the questions involved, and "bears the impress of the Chancellor's judicial opinion upon the merits of the case."

The Chancellor should have passed a final decree in favor of the appellant. There was no necessity for an account to this end. No interlocutory proceeding was necessary, and in fact, this order is decisive of the right involved, and is to that extent final. An order is interlocutory, where it happens that some material circumstance or fact necessary to be made known, is either not stated, or so imperfectly ascertained, that the court, *by reason of that defect,* cannot determine finally between

the parties, and a reference is necessary to have the doubts occasioned by that defect removed. See *Maryland Ch. Prac.* 122. Here there was no fact required to be more fully ascertained, to enable the court to determine finally between the parties. Upon the whole case as it then appeared, he should have decreed in favor of the appellant. It was *ready for* a final decree, because all the circumstances and facts material and necessary to a complete explanation of the matters in controversy, were brought before the court, and so fully ascertained by the pleadings and proofs that the Chancellor could have collected the respective merits of the parties, and determined fully and finally that the appellee was not entitled to relief.

This is an order in the nature of a final decree, in the contemplation of chap. 185, of 1830. It decides the rights of the parties. It concludes the mind of the Chancellor upon all the points on which he has expressed himself, and leaves him nothing to do but to ratify what the auditor may report in pursuance of the order.

The Chancellor has given a construction to the will of *Beanes,* by which the appellee is entitled to this fund : that the whole proceedings must be considered as one entire suit about the same subject matter; that the appellee need not look alone to his suit at law or the bond, &c., &c. (See his order.) And as stated in *Thompson vs. McKim,* 329, " he has passed an order upon the issue in the cause relative to the subject matter in dispute, and involves a decision of the question of right between the parties." It aggrieves the party, and is the subject of appeal.

The court, in giving their òpinion in the case of *Thompson and McKim,* say, " but where there is a decretal order passed upon the issue in a cause, in relation to the subject matter of controversy, which decides and settles the question of right between the parties, there an appeal will properly lie." It is contended, that the principle decided in this case is conclusive of the motion to dismiss here. Upon looking to the issues presented by the pleadings in this cause, it will be found, that

the appellant denied that the sureties of the trustee, *James A. Magruder*, were responsible for any claim which *Melicent Magruder* might have under the provisions of the will of *William Beanes*, to the fund held by said *James A. Magruder*, as trustee for *Philip Key*. It was denied, that the condition of this bond covered or protected any claim which the appellee's *cestui que trust* might have in said fund; and secondly, that if the said bond was responsible, that it was a subsisting legal contract, and the party's remedy was a legal one. See the appellant's answer. It was also denied, that the appellee had a right to ask for the payment of his claim against the sureties of this bond, out of this particular fund; that such a course would be prejudicial to the other creditors of *Beanes*. It cannot be denied, that these several issues and questions raised by the petition and answer, and upon the decision of which depended the appellee's right to recover, were involved in the Chancellor's order, and conclusively determined by him. The Chancellor decides " that no one of the parties to this proceeding can have awarded to him any thing until he has made good all that, the safety of which he had became bound to assure to his co-distributees or co-legatees, so that neither *Philip Key, Colmore Beanes*, nor *John H. Beanes*, or either of their representatives, can be allowed to receive any thing, either principal or interest, until *Melicent Magruder* has obtained a full satisfaction of her share, or so much thereof as has been lost by the misconduct of *James A. Magruder*, who as trustee, must be regarded as an officer of the court, for whom *Philip Key, Colmore Beanes* and *John H. Beanes*, were sureties on his trustee bond, for although an action at law might have been sustained against them on their bond, yet, as it forms a part of these proceedings, and the nature and extent of their liability to *Melicent Magruder* has been thus placed upon the record, they cannot be allowed here to clear themselves from it to her prejudice, or to the prejudice of those who may claim after her.

Does not the Chancellor there expressly determine the extent of the liability of the parties to this bond, and decide conclusively that the sureties are responsible to the petitioner for

the defalcation of *James A. Magruder*, the trustee for *Philip Key.* That the appellee is entitled to recover by this proceeding in equity, and also entitled to recover the amount of her claim from the particular fund in controversy? Thus denying the correctness of this part of the appellant's defence, affecting directly his interest in the fund. The Chancellor himself considered this order as a decretal order, according to the act of 1830, chap. 185, for he states that his *opinion* harmonises with the opinions of the court below, passed in the cause, the last of which was a final order.

The answer of the appellant also maintains the position, that the petitioner cannot recover in this proceeding, because he was not properly a party thereto; that the petition was not sworn to, and was in other respects informal, and these questions were certainly included in the Chancellor's order, and if so, the appellant did properly take an appeal. *Wolf vs. Wolf,* 2 *Harr. & Gill,* 383.

But if the appeal should be considered as premature under the decisions of this court, antecedent to the act of Assembly of 1841, chap.    ; it is contended, that this act embraces the present case. The act referred to authorises an appeal from such a decree, for the payment of money, and that is the character substantially of the Chancellor's order. Upon adverting to the order of the court below, passed on the 11th of July, 1837, it will be found, that the auditor's report distributing the trust fund, was ratified, and the trustee was directed to pay to the respective parties, or their representatives, their proportion of the same. And the Chancellor, in substance decided, that *Melicent Magruder* shall receive all that is due her, both principal and interest, out of the appellant's portion of this trust fund; and the object of the *reference* of the case to the auditor, is only to ascertain the amount due her. He has certainly decided, that she is to be paid from the fund in court, whatever amount is ascertained to be due her; and consequently, the order is essentially one for the payment of money, in the language of the law. This order is within the spirit, if not within, the letter of the law, which is a remedial one, and will receive a liberal construction.

It is submitted, that a speedy determination of the cause, the prevention of delay, and unnecessary costs to the parties, should authorise a full hearing of the case on its merits, at this time, and that the motion to dismiss the appeal will be overruled.

ARCHER, J., delivered the opinion of the court.

The order of the Chancellor of 16th November, 1840, appealed from in this case, is not a final decree, or in the nature of a final decree, so as to authorise an appeal since the act of 1830, chap. 185. The order does not adjudicate any right between the parties. It is preparatory only, and directs the auditor to state an account, with a view to a future decree, and that such account should be stated, in conformity with the then existing views of the Chancellor, various opinions are expressed in the order and suggested to the auditor. But nothing has been done by the Chancellor which settles any right, or from which he might not have departed in any future stage of the cause, although the auditor may have reported in strict compliance with the Chancellor's views as indicated by the order; still, it was in the Chancellor's power to overrule the account, and to have ordered another account to have been stated upon different principles, or even to have dismissed the petition, if in his judgment justice required it. The appeal is accordingly dismissed.

APPEAL DISMISSED.