JOHN B. PEYTON
vs.                     } December Term, 1849.
ROBERT H. AYRES ET AL.

[construction of deeds—annuity.]

In construing deeds, the courts are, first, by an inspection of the grant, to ascertain what the parties intended should be effected by it, and then, so to expound it as to accomplish that intention, unless expressions are employed which positively forbid it.

Where the premises (which word constitutes every thing which precedes the *habendum*,) make it clear that the intention was to secure the plaintiff an annuity of $120, during the natural life of M. A., the court will construe the deed so as to effectuate this intention, though the *habendum* contain no words of limitation defining the duration of the estate.

In case of a mortgage payable by instalments, a sale will be decreed of so much of the property as will pay the amount due, and the decree will stand as a secu-

rity for the other instalments as they become due ; and if the property cannot be sold in parcels it may be sold entire, and the whole debt paid with rebate of interest for sums not due.

The method in this state of ascertaining the present value of an annuity for life, as adopted by the Court of Appeals, is to apply by analogy the Chancery rule for fixing the allowance to a woman in lieu of dower in lands sold under a decree.

Though the report of the Auditor may be in exact conformity with a preceding order, it is competent for the court to reject the report, and order another to be made upon different principles, or adopt any other mode of disposing of the case which justice may require.

———

[The bill alleges that the complainant, having a common interest with the defendants, Robert H. Ayres, and Alethea, his wife, in certain lands, subject to dower of Mrs. Mary Ayres therein, at the request of said Robert and wife, assumed the payment to said Mary of $240 annually, as a consideration for the relinquishment of her said dower interest; and that said Robert, in consideration thereof, bound himself to pay to complainant, annually, during the life of said Mary, the sum of $120, being the share of said annuity which corresponded to the interest of said Robert and wife in the lands so disencumbered; and to secure the payment thereof, said Robert and wife executed a mortgage to complainant of that portion of said land allotted them in the division of the estate, dated 29th March, 1843, conditioned for the payment of said sum of $120 during the natural life of said Mary; and prays for a sale of so much of the mortgaged property as may be necessary to pay said debt.

On the 30th April, 1849, a decree was passed for the sale of the land; and on the 23d of October the Auditor stated two accounts, to which defendants excepted, on the grounds :

1st. That only a *life estate* was conveyed in the mortgage to complainant.

2d. That the bill makes complaint only as to unpaid arrears, and not for the future dues of the annuity.

3d. That in estimating the present value of the annuity, the Chancery rule for commutation applies, and not the Northampton tables.

7*

Upon hearing these exceptions, the Chancellor delivered the following opinion :]

The Chancellor:

Upon carefully reading the mortgage deed of the 29th of March, 1843, from the defendants, Robert H. Ayres, and Alethea, his wife, to the complainant, I am of opinion, that its legal effect is to secure to the complainant the annuity therein mentioned, of one hundred and twenty dollars, during the life of Mrs. Mary Ayres.

That such was the intention of the parties to the instrument, is too clear for dispute, and, as has been said by the Court of Appeals, in a recent case, it is the duty of courts, (the intention being ascertained,) to give the instrument such an interpretation as will effectuate that intention ; provided the terms and expressions employed will admit of such construction. The courts are first, by an inspection of the grant, to ascertain what the parties intended should be effected by it, and then they are so to expound it as to accomplish that intention, unless expressions are employed which positively forbid it. In this case, the recitals, constituting a portion of the *premises* of the deed, which word *premises* constitutes every thing which precedes the *habendum,* make it too plain for argument, that the intention was to secure the plaintiff the annual sum of one hundred and twenty dollars, during the natural life of Mrs. Mary Ayres, and, therefore, although the *habendum* contains no words of limitation, defining the duration of the estate, the grant must be construed with reference to the manifest intention of the parties, and be made to convey an interest commensurate with the object to be accomplished. *Budd* vs. *Brooke et al., Lessee,* 3 *Gill,* 198, 234, 235. I am, therefore, of opinion, that the exception of the defendant, Banks, filed on the 5th inst., to the report of the auditor, must be overruled.

The same party has also excepted to the Auditor's report, upon the ground, that the effect of the proceedings in this case, which originated in a bill filed by the mortgagee, in July, 1846, for a foreclosure and sale of the mortgaged premises, is to ex-

tinguish all right on his part, to any allowance out of the proceeds of sale for the annuity, which might accrue after the day of sale. It would certainly be a thing to be regretted, if such should be the case; because nothing can be clearer than that the complainant had a right to file his bill for a sale, upon the default of the mortgagors to pay the annuity as it became due; and it would be a reproach to our system of jurisprudence, if ˙ must, in the exercise of this unquestioned right, forfeit all s˳ ˙ᵗv for future payments. The authorities are, I think, the otl. way, and show very clearly, that whilst the mortgagors may prevent a foreclosure or sale, in the case of a mortgage payable by instalments, or when interest is ˙due but not the principal, by paying the sum due; yet if he fails to do so, a sale will be decreed, of so much of the property as will pay the amount due, when the decree will stand as a security for the other instalments as they may become due; or if the property cannot be conveniently or safely sold in parcels, it may be disposed of entire, and the whole debt paid, with such rebate of interest on the sums not due, as may be just and equitable.

This I understand to be the settled doctrine upon the subject, and undoubtedly meets the justice of the case. *Salmon* vs. *Clagett*, 3 *Bland*, 179. *Binckerhoof* vs. *Thallhimer*, 2 *Johns. Ch. R.*, 486. *Campbell et al.* vs. *Macomb et al.*, 4 *ib.* 534. This exception, therefore, cannot be sustained.

The remaining question relates to the propriety of the rule adopted by the Auditor for ascertaining the present value of the annuity, payable to the complainant during the life of Mrs. Mary Ayres. In the account A, he has ·assigned to the complainant so much of the proceeds of the sales as would, according to Dr. Price's Northampton Tables, be sufficient to purchase such an annuity; though, as he observes, there is no evidence that the sum so assigned would be sufficient for the purpose.

These tables were formed by Dr. Price, from bills of mortality, kept in the parish of All Saints, in the town of Northampton, in England, from the years 1735 to 1780; but it seems to be conceded, they would not now, in England, furnish a safe guide to follow, in estimating the present value of a life

interest.   The tables of Dr. Halley, founded upon observations at an earlier period, as to the duration of human life, and which were adopted by the Chancellor, in the case of *Dorsey* vs. *Smith*, reported in 7 *H. & J.*, 345, were repudiated by the Court of Appeals in that case, and it was deemed better, and more just, to apply, by analogy, the rule long before, and still followed in this court, for the purpose of fixing the allowance to a woman, in lieu of dower in land, sold under the decrees of the court.   In the case of Dorsey vs. Smith, it became necessary to ascertain the present value of a legacy purchased before it was due, being payable in one year after the death of a party then living; and who was shown at the date of the purchase, to have been about forty years of age, and the court adopting the rule referred to, regulated the amount accordingly.   The case now under consideration, cannot, I think, be distinguished from that, the legacy in Dorsey vs. Smith being payable in one year from the death of a living person, its present value depended upon the probable duration of the existence of such person, and the court instead of resorting to those tables, which had been formed from observations made in other climates, and at different periods, and upon which the expectation of life, in those climates, and at those periods, might be calculated with a sufficient degree of certainty, rejected them as unsafe guides here, and in this age, and chose rather to rely upon the ancient rule of this court, as more likely to subserve the purposes of justice.   But if these tables were unfit to be adopted, as not suitable to this state, without being tested by a long series of observations here, as the Court of Appeals expressly affirm ;   and if the probable duration of the life of the party, in Dorsey and Smith, could be better ascertained by applying the Chancery rule before referred to, why should not the same rule be adopted in this case ?

The object here is to ascertain as near as may be, the probable duration of the life of Mrs. Mary Ayres, a person, as stated by the Auditor, proved to be fifty-five years of age.   The object in the other case, was to determine in the same way, the probable duration of the life of Mrs. Dorsey, shown to have

been about forty years of age; and I cannot understand why the rule should not obtain in both cases, as in each, the decision of the question must be governed by the expectation of human life, and the Court of Appeals says there is a better chance of justice being effected, when that question is involved, by applying, by analogy, our rule, than by consulting tables framed upon observations made in other ages, and in other countries.

My opinion, therefore, is that the Chancery rule is to be adopted, and I shall refer the case again to the Auditor for that purpose, when proof may be supplied of the state of the health of Mrs. Mary Ayres, on the 16th day of January, 1850.

[The case was accordingly referred to the Auditor, for the purpose of stating an account in conformity with these views.

On the 3d of April, the Auditor stated his account C, to which the complainant excepted, on the ground that there had not been a sufficient amount granted him to pay said annuity; and on the 26th of September following, the Chancellor delivered the following opinion :]

THE CHANCELLOR:

This case is brought before the court upon exceptions to the report of the Auditor, made in pursuance of the order of this court, of the 16th of January last; and before the exceptions are considered, it becomes necessary to inquire, whether that order is so far conclusive, as to be binding upon the court; even though the views now presented, and the evidence subsequently taken, should make it apparent, that the ratification of the report would result in injustice.

Upon examination of the cases referred to in the argument, and especially that of *Clagett, Administrator* vs. *Crawford, Trustee*, 12 *G. & J.*, 275, I am quite satisfied that although the report of the Auditor, may be in exact conformity with the views expressed, and the directions given in the former order; it is entirely competent to the court to reject the report, and order

another to be made, upon different principles; or to adopt any other mode of disposing of the case, which justice may require.

The evidence taken under the order of the 16th of July last, renders it very clear to my mind, that the amount assigned to the complainant for the annuity of $120, is wholly insufficient, and that manifest and great injustice will be done him, if the report is confirmed.

· Mr. Donaldson, the president of the Baltimore Life Insurance Company since its organization in 1831, proves that the annuity in question was worth $1286 17, according to the tables upon which the business of that company is regulated, being the Carlisle tables, which tables, he says, furnish a fair business criterion, and a reasonable average profit; whilst the Auditor's report gives to the complainant but $666 67. If this be so, and there is no counter testimony, it follows that the complainant, if the report is confirmed, will receive very little more than one-half the value of the annuity. This certainly is a result very much to be deprecated, and one which should be avoided, if it be possible to escape it, without trenching upon principles so firmly established as to leave the court no alternative.

My impression is, that if this question was now before the Court of Appeals, with the lights which observation, and the experience of our insurance companies would throw upon it, that tribunal would not come to the conclusion, to which, in the year 1826 it arrived, in *Dorsey* vs. *Smith*, 7 *H. & J.*, 345.

When that decision was made, no observations had been made in this country, nor had insurance companies in Maryland, (for there were then none in existence,) by their experience, shown the applicability of the English tables to our latitude and climate. In the absence of all experience upon the subject, the court thought it would be hazardous to follow these guides, and chose rather to apply by analogy the rule long before adopted in the Chancery Court, for the purpose of ascertaining the value of a dower interest in land, sold under its decrees.

But, although the Court of Appeals might, and I think would at this day, establish a different rule for ascertaining the value

of life annuities, I certainly do not feel myself at liberty to do so, so long as the case of Dorsey vs. Smith stands, unreversed and unqualified by the high tribunal which decided it; it would be, as it appears to me, unbecoming in this court, and inconsistent with that subordination to superior authority, so necessary to the orderly and harmonious administration of justice, to adopt a different principle. The principle there settled, and which, in my opinion, is entirely applicable to the question discussed in this case, must furnish the rule and control the decision; unless, indeed, a mode exists of disposing of the cause, altogether irrespective of the rule, and in a way which will more certainly subserve the purposes of justice.

My opinion is, that such a mode does exist, and, therefore, without in any degree departing from the rule established in Dorsey vs. Smith, the rights of the parties in this cause may be settled in a way which will be perfectly just.

In Dorsey vs. Smith, from the circumstances of the cause, it became absolutely necessary to ascertain the value of the legacy purchased by Dorsey, before it became due. It was to be paid one year after the death of a party then living, and, consequently, its value at the date of the purchase depended upon the probable duration of the life of such party. The cause could only be settled by determining the value of this legacy and crediting the purchaser of it, for such amount as it should be ascertained to be worth, at the date of the purchase.

But the cause now under consideration, may be settled without determining the value of the annuity, and paying such value in money at this time. This may be effected by pursuing the the course adopted by the Court of Appeals, in the case of *Buchanan* vs. *Deshon*, 1 *H. & G.*, 280; that is, by directing so much of the proceeds of the sale to be invested as will be necessary to raise the amount of the annuity during the life of Mrs. Mary Ayres—which, as heretofore declared, was the obvious intention of the mortgage from Robert H. Ayres and wife, to the complainant. The intention of that mortgage was to secure to the complainant the annual sum of one hundred and twenty dollars during the life of Mrs. Mary Ayres; and, I am of opin-

ion, that the money raised by the sale of the mortgaged estate, should be made to stand in the place of the estate, and furnish the same security.   The case of *Buchanan* vs. *Deshon* is a direct authority for this : because there, as here, an annuity was to be paid out of a fund under the control of the court, for the life of a party; the principal, at the death of the annuitant, being payable to the parties.

This arrangement has the recommendation of indemnifying the complainant, according to the provisions of the mortgage, and preserving the capital for those who may be entitled to it after the death of Mrs. Mary Ayres.   Banks, the defendant, has no right to complain, because, as the assignee of the equity of redemption and purchaser at the trustee's sale, he gets precisely the rights, which as such assignee and purchaser, he is entitled to.   An order will be passed in conformity with these views, and when the trustees  shall have made the investment and reported the same to this court, such further order will be passed, as the nature of the case may then require.

For Complainants—S. T. WALLIS, C. I. PENNINGTON and H. W. THOMAS.

For Defendants—DAVID and JOHN STEWART and CHARLES F. MAYER.