(Decided 30th June, 1881.)

---

## EZRA NALLY *vs.* SIMON LONG, and others.

*Appeal—Whether an order referring a case to the Auditor was Final or interlocutory—Effect of an unrecorded Mortgage as against Subsequent creditors without notice—Constructive notice—Principal and surety.*

The real estate of J. N. deceased, being less than $2500 in value, was sold under a decree of the Orphans' Court at the suit of creditors of the deceased. Among the claims filed were, 1st. A mortgage from the deceased to J. R. dated May 6th, 1864, not recorded until February 22nd, 1868. This mortgage was assigned April 1st, 1874, to P. L. and by him to E. N., October 30th, 1877. 2nd. A single bill, payable to the same J. R., dated April 1st, 1874, made by J. N. as principal, with two sureties. This single bill was paid by S. L., one of the sureties, September 15th, 1880. A part of the purchase money for the land being in the hands of the trustees for distribution, the auditor stated an account by which the whole net balance was distributed to the assignee of the mortgage, being less than his claim. It was admitted the mortgage was not withheld from record with any fraudulent intent, and also, that the other creditors had no notice of the mortgage till the filing of the bill in this cause. Upon exceptions to the audit, the Orphans' Court delivered an opinion and ordered, adjudged and decreed that the distribution in favor of the mortgage claimant be set aside, and

further ordered a distribution *pro rata* among the creditors of the deceased; and referred the case to the auditor to make distribution according to said opinion and decree. On appeal, it was HELD:

1st. That the order of the Orphans' Court was not merely interlocutory, but was, in its nature, a final order. It was in form a judgment or decree deciding and settling the very matter in controversy between the parties, and determining the question of right in issue in the cause. And from such an order or decree an appeal properly lies.

2nd. That the mortgage having been placed upon record after the lapse of the time prescribed by law, and without any order or decree of a Court of Chancery for that purpose as prescribed by the Code, Art. 16, sec. 23, the registration of the paper could not have the effect of constructive notice to subsequent purchasers or creditors; as to them it must be considered as an unrecorded mortgage.

3rd. That the rights of the sureties of J. N. on the single bill, were not affected by the fact, that the creditor at the time the debt was contracted, held an unrecorded mortgage of the principal debtor, of which the sureties were ignorant.

4th. That S. L., the surety, by whom the single bill was paid, was entitled to claim distribution with respect to the amount of the single bill, *pari passu* with the debt secured by the mortgage.

The implied obligation of the principal to indemnify his surety, springs up at the time the relation is entered into, and is consummated when the surety has paid the debt. And his claim against the principal relates back to the time when the debt was contracted.

APPEAL from the Orphans' Court of Washington County.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON, IRVING, RITCHIE and MAGRUDER, J.

*Edward Stake*, for the appellant.

*H. H. Keedy*, for the appellees.

Nally *vs.* Long, *et al.*

BARTOL, C. J., delivered the opinion of the Court.

Under the Acts of 1866, ch. 81, and 1878, ch. 336, (Revised Code of 1878, Art. 50, secs. 204, 205,) the real estate of Jacob Newman, deceased, being less than $2500 in value, was sold in accordance with a decree of the Orphans' Court of Washington County, passed on the 14th day of August 1877, at the suit of creditors of the deceased. The sale was reported and ratified, and a part of the purchase money was paid to the trustees, and was in their hands for distribution. The principal claims filed were,

*1st.* A mortgage for the sum of $975 from Jacob Newman to John Reichard, dated May 6th 1864, not recorded until February 22nd 1868. This mortgage was assigned to Peter Long, April 1st 1874, and by Peter Long to Ezra Nally, the appellant, October 30th 1877.

*2nd.* A single bill for $353.62 payable to the same John Reichard, dated April 1st 1874, made by Jacob Newman as principal, and Simon Long and Jonathan Slifer as his sureties. This single bill was paid by Simon Long, one of the sureties, September 15th 1880.

*3rd.* A note for $73.25 held by Dr. Wm. H. Grimes against Jacob Newman, dated February 19th 1876.

*4th.* A judgment rendered by a justice of the peace, June 19th 1875 against Jacob Newman for $33.01 debt, and 95 cents costs, in favor of C. Downs, and by him assigned to Joseph R. Long.

The case was referred to the auditor, who stated an account, by which, after allowing expenses and commissions, there appeared a balance of $514.04 which was all distributed to the appellant, assignee of the mortgage, in preference to, and to the exclusion of, the other claims. Simon Long, Slifer and Dr. Grimes filed exceptions to the ratification of the auditor's account upon the ground that the mortgage was not entitled to priority.

An agreed statement of facts was filed, whereby it was admitted

1st. That the mortgage was not withheld from record, with any fraudulent intent.

2nd. That John Reichard, the holder of the note for $353.62 with Simon Long and Jonathan Slifer as sureties, * * is the mortgagee named in the mortgage given on the 6th day of May 1864.

3rd. That Long and Slifer, the sureties on said note, Dr. Grimes, and Joseph R. Long who are creditors subsequent to the mortgage, had no notice of the existence of the mortgage, until the filing of the bill of complaint in this cause.

4th. That Simon Long has paid the note of $353.62 to John Reichard on the 15th of September 1880.

Upon the hearing of the exceptions, the Orphans' Court delivered an opinion, and on the 29th day of September 1880, "ordered, adjudged and decreed that the distribution of the sum of $514.04 to Ezra Nally in part payment of the mortgage and interest, amounting to $877.82 in the audit, be and the same is hereby set aside, rejected and made void, and they further ordered that the sum of $514.04 shall be distributed *pro rata* among the creditors of Jacob Newman, deceased, as follows, *to wit*, to *Ezra Nally* on his mortgage ; to *Dr. Grimes on his note ;* Simon Long and Jonathan Slifer as sureties for said Jacob Newman on a note dated April 1st 1874, which said Simon Long has paid to John Reichard the payee therein ; to Joseph R. Long on magistrate's judgment unrecorded, &c., &c." And the case was "referred to the auditor to make distribution of the said sum of $514.04, according to this opinion and decree, &c."

From this order the present appeal was taken, and the first question arises upon the motion to dismiss the appeal. The reason assigned in support of the motion is that the order from which the appeal has been taken is merely interlocutory, and not in the nature of a final order or decree.

We have referred to the cases cited in the appellees' brief, and also to *Snowden vs. Dorsey,* 6 *H. & J.,* 114; *Thompson vs. McKim,* 6 *H. & J.,* 302; *Hagthorp vs. Hook,* 1 *G. & J.,* 270; *Clagett vs. Crawford,* 12 *G. & J.,* 275; *Hill vs. Reifsnider,* 39 *Md.,* 431; and *Meyer vs. Stewart,* 48 *Md.,* 425; in each of which was involved a question somewhat similar to the one here presented.   An examination of the decided cases has satisfied us that the order of the Orphans' Court is not merely interlocutory, but is in its nature a final order.   It is in form a judgment or decree, deciding and settling the very matter in controversy between the parties, and determining the question of right in issue in the cause.

From such an order or decree on appeal properly lies. *Thompson vs. McKim,* 6 *H. & J.,* 328.   The motion must therefore be overruled.

The only question presented by the record is the proper distribution of the fund in the hands of the trustees.

The mortgage having been placed upon record after the lapse of the time prescribed by law, and without any order or decree of a Court of Chancery for that purpose as prescribed by the Code, Art. 16, sec. 23; the registration of the paper could not have the effect of constructive notice to subsequent purchasers or creditors; as to them it must be considered as an unrecorded mortgage. This was expressly decided in *Stanhope vs. Dodge,* 52 *Md.,* 486, 493.   In the same case it was held that it operates to give to the mortgagee priority over all creditors of the mortgagor whose debts were contracted before its date, and also over all subsequent creditors who became such with actual notice of the mortgage.

It being admitted that Dr. Grimes and Joseph R. Long, who became creditors of Newman, after the date of the mortgage, were without actual notice thereof, it follows that they are entitled to claim *pari passu* with the appellant.

With respect to the single bill for $353.62.—It is admitted that Newman was principal debtor, and Simon Long and Jonathan Slifer were his sureties, and had no notice of the existence of the mortgage, till the bill of complaint was filed.

Simon Long having paid the debt, now claims that he is entitled to have the same allowed in the distribution of the fund, *pari passu* with the mortgage debt. This is resisted by the appellant, on the ground that Reichard, the obligee in the single bill, was also the mortgagee, and had of course, notice of the mortgage, and that Long, the surety, upon the payment of the debt, was subrogated to the rights of the creditor, and can claim no other or greater rights than could be claimed by Reichard. Or in other words, that Long, the surety, is affected by the notice which Reichard had of the mortgage. This proposition ignores the relation which existed between Newman, the principal debtor, and his sureties. The protection secured by the Code to subsequent creditors, is given to those "who may trust such party after the date of such deed." *Code, Art.* 16, *sec.* 23; *Dyson vs. Simmons*, 48 *Md.*, 219. The inquiry then is, when did the sureties trust Newman, the principal debtor? When did the implied obligation of the latter to the former arise? The answer to this question is, that this implied obligation arose at the time the suretyship was entered into.

In *Zollikoffer vs. Seth*, 44 *Md.*, 359, in speaking of the right of contribution which exists as between co-sureties, it was said, "the equitable obligation, which binds one surety to contribute to another, springs up at the time the relation is entered into, and is consummated when the surety has paid the debt."

The same principle applies as between the principal debtor and the surety.

Although the rights of the latter are not consummated until he has paid the debt, they sprang into existence at

the time when the debt was contracted, and his claims against the principal debtor, relate back to that time. It would be inequitable to hold that the rights of the sureties are in any manner affected by the fact, that the creditor, at the time the debt was contracted, held an unrecorded mortgage of the principal debtor, of which the sureties were ignorant.

In our opinion, Simon Long is entitled to claim distribution, with respect to the amount of the single bill, *pari passu* with the debt secured by the mortgage.

The order of the Orphans' Court will therefore be affirmed, and the case remanded.

*Affirmed and remanded.*