## BLACK et al. v. RENO et al.

(Circuit Court, E. D. Missouri, E. D. February 24, 1894.)

No. 3,653.

1. MORTGAGES—TRANSFER—LIEN—DISCHARGE.
   Where negotiable notes secured by a mortgage duly recorded are transferred for value before maturity to a third person, a subsequent acknowledgment of record by the mortgagee of satisfaction of the debt secured does not impair the lien of the mortgage unless it was made with the knowledge or assent of the holder of the notes; and hence a purchaser of the mortgaged land is not protected by such release, though he purchases on the faith of it.

2. NEGOTIABLE INSTRUMENTS—TRANSFER—HOLDERS FOR VALUE.
   Taking notes as collateral security for money loaned at the time will constitute the lender a holder for value of such notes.

3. SAME—COLLATERAL SECURITY—ACTION.
   The recovery of judgment against the maker of a note will not bar the creditor's action on other notes taken by him as collateral security for the loan, so long as that judgment remains unsatisfied.

4. MORTGAGES—FORECLOSURE—INSTALLMENTS OF DEBT.
   A mortgage recited that it was given to secure the payment of two notes, one payable in five, and the other in ten, years, with interest payable annually; and the condition required the maker to pay "the notes and all interest that may be due thereon, according to the tenor and effect of said notes." Both notes and mortgage were transferred as collateral security for a loan, which was not paid at maturity; and the holder brought suit to foreclose the mortgage, the first note being due and unpaid, and no interest having been paid on either note. *Held,* that he was entitled to foreclose without waiting for the maturity of the second note.

5. SAME—SALE—INSTALLMENTS NOT YET DUE.
   Where foreclosure is sought of a mortgage securing several notes, only part of which are due, the court will order the sale of so much of the land as is necessary to pay the overdue notes, leaving the decree to stand as security for the others; or, if the land is not susceptible of division,

it will order that the whole be sold, and that the balance of the proceeds, after paying the overdue notes, be paid into court, and held subject to its order.

6. SAME—PURCHASERS SUBJECT TO LIEN—MARSHALING.
Where part of the mortgaged land has been sold, but remains subject to the lien, its sale on foreclosure will be postponed until it is sure that the proceeds of the residue are not sufficient to satisfy the debt; and a reasonable time will be given the owner in which to satisfy any balance due after such proceeds are applied to the debt.

7. SAME—LIEN—HOMESTEAD.
Where the owner of land executes a mortgage thereon while he is unmarried, his subsequent marriage cannot raise any homestead right in the land as against the mortgagee.

8. USURY—WHEN AVAILABLE AS DEFENSE.
Where a note has been reduced to judgment, and the amount recovered is no greater than what might have been recovered under the laws of the state, even if the contract had been usurious, the question of usury in the original transaction cannot be raised by one who is proceeded against in respect of collateral security given for such note.

In Equity. On final hearing. Bill by Robert J. Black and others against John W. Reno and others. Decree for complainants.

This is a bill in equity to foreclose a mortgage on real estate situate in Pemiscot county, in this state. On the 13th day of September, 1886, the respondent W. A. Reno, then unmarried, executed his two several promissory notes to the co-respondent John W. Reno, each for the sum of $5,000, payable to order,—the first of said notes being payable five years after date, and the second ten years after date; the first bearing 10 per cent. interest, and the second 8 per cent. interest, per annum from date,—to secure the payment of which the said W. A. Reno, at the time of the execution of said notes, executed and delivered to said John W. Reno a deed of mortgage on certain described lands in said county, containing about 391.63 acres, which said mortgage was duly recorded in the recorder's office of said county on the 14th day of December, 1886. The conditions of said mortgage were, in substance, that if the said W. A. Reno should pay the sum specified in said notes, and the interest due thereon, according to the tenor and effect of said notes, the conveyance should be void, "but, if the said he should not be well and truly paid when same become due and payable according to tenor and effect thereof, the deed should remain in full force;" and the said John W. Reno was authorized to proceed to sell the said real estate, or any part thereof, at public vendue to the highest bidder, at the courthouse door of said county, on giving 30 days' public notice, and upon such sale and payment of the purchase money he should execute and deliver a deed of said property to said purchaser, and out of the proceeds of such sale he should pay, first, the expenses of the trust, and next whatever might be in arrears and unpaid on said land, whether principal or interest, and the balance, if any, should be paid over to said William A. Reno. To understand the last recitation it should be stated that the said notes represented what was claimed by the parties thereto to be the purchase money of the sale of said land from said John W. to William A. Reno, the said John W. being the father of said William A. Thereafter, on the 26th day of March, 1889, said John W. Reno borrowed from the complainants the sum of $4,000, and executed to them his two several promissory notes, each for $2,500, payable in one and two years thereafter; and to secure the payment of said notes, and as a part of the consideration of said loan, the said John W. Reno transferred them by the indorsement of his name thereon, and delivered the same to the complainants, together with said mortgage deed. Upon the maturity of said notes so executed by John W. Reno to complainants, the same remaining unpaid, complainants instituted suit in this court against said John W. Reno, and obtained judgment thereon, June, 1891, for the sum of $4,000, with 6 per cent. interest from the 26th day of March, 1887, and which judgment was by consent of

parties. No part of said judgment having been satisfied, the complainants instituted this action on the 10th day of March, 1892, on said notes for $5,000 each, so held by them as collateral security, and to foreclose said mortgage, and to have the lands sold to satisfy the same. The bill joins, as co-respondents with the said Renos, James H. Howard and W. R. Fields, as subsequent incumbrancers, or as asserting some right and interest in the said property. As the respondent Fields has offered no proof in support of his answer, and does not appear at the hearing of this cause, it is not deemed necessary to make, in this connection, any detailed statement relative to his defense, as it does not touch the merits of the controversy. After the transaction aforesaid between the complainants and John W. Reno, the said Reno went to the recorder's office in Pemiscot county, and entered satisfaction, on the margin of the record of said mortgage deed, as to 160 acres of said land, and thereupon he took from his said son, William A. Reno, another note for $1,800, secured by mortgage on said 160 acres of land. This was of date June 10, 1890. This note John W. Reno negotiated to one Hunter for value received, on exhibiting to him an abstract of the title to said land, showing said satisfaction of the mortgage to the 160 acres. This mortgage was foreclosed, and Hunter became the purchaser thereunder, and then conveyed to the respondent Howard, who claims to be a purchaser for value, without notice of the first mortgage. He sets up in his answer other matters, which are sufficiently noticed in the opinion herein.

Harvey & Hill and J. E. McKerghan, for complainants.
W. W. McDowell and Lubke & Muench, for respondents.

PHILIPS, District Judge, (after stating the facts.) 1. The claim of respondent Howard that he sustains the relation of an innocent purchaser is not tenable. It is the settled rule of law in this state, where the land is situated, and the transaction respecting the mortgage was had, that where negotiable notes, like these, secured by deed of mortgage or trust duly recorded, are transferred for value to a third party before maturity, such transfer not only carries the mortgage with the notes, but a subsequent acknowledgment of record by the mortgagee of satisfaction of the debt secured, or any part thereof, without the knowledge or assent of the holder of the note, does not affect or impair the mortgage lien, and is of no effect in favor of one buying on the faith of such release. Anderson v. Baumgartner, 27 Mo. 80; Goodfellow v. Stillwell, 73 Mo. 19; Joerdon v. Schrimpf, 77 Mo. 383; Logan v. Smith, 62 Mo. 459; Lee v. Clark, 89 Mo. 553, 1 S. W. 142; Hagerman v. Sutton, 91 Mo. 520–533, 4 S. W. 73.

2. Taking the notes as collateral security for money at the time loaned on the faith thereof constituted the complainants innocent holders for value. 2 Rand. Com. Paper, §§ 456, 799; 1 Daniel, Neg. Inst. § 771; Logan v. Smith, 62 Mo. 455. This is especially the rule of the federal courts. Carpenter v. Longan, 16 Wall. 271; Swift v. Smith, 102 U. S. 442; Sawyer v. Prickett, 19 Wall. 147; Bank v. Matthews, 98 U. S. 621; Oates v. Bank, 100 U. S. 246.

3. The resort to the action at law and recovery of judgment therein on the notes executed by John W. Reno to complainants constituted no bar to this action, that judgment being unsatisfied; and especially so when Reno is insolvent. 2 Rand. Com. Paper, § 796. The pledgee takes commercial paper as a trust for the pledgor, and it becomes his duty to proceed to collect the same on its maturity;

and he need not defer its collection until the maturity of the original debt. Id. § 795.

4. It is objected that this action is premature, for the reason that, by the terms of the mortgage deed, no foreclosure is permissible until after the maturity of the 10-years note. The first note and all the interest thereon were past due when this suit was instituted, and no interest had been paid on the 10-years note. If this action is to be postponed until after December 13, 1896, the situation of the creditor is most unfortunate. It is very questionable whether the whole security be sufficient to discharge the judgment of complainants against John W. Reno, and it is quite clear, from all the evidence and circumstances in the case, that it is not near adequate, at this time, for the redemption of the mortgage debt. The principal and interest of the two notes at the end of 10 years would amount to $19,000. The maker of the notes, as well as the assignor, is not only insolvent, but the possession of the land and the usufruct thereof have passed from them under a junior incumbrance and judgment. In such condition of the security, a chancellor would at least grant the prayer of the bill for the appointment of a receiver, to secure to the mortgagor the rentals of the lands in mitigation of the accumulating interest, amounting to $900 per annum,—a sum undoubtedly far in excess of the value of the rentals. Before a court of equity would give a construction to the mortgage productive of such dire results, it should certainly clearly appear on the face of the mortgage deed that it was within its terms that the mortgagee should be so postponed. Of course, a court of equity could not, in this action, afford relief against the express contract of the parties. The courts universally hold that, under a mortgage to secure a debt payable in installments, the right to foreclose arises on a default in any one installment, in the absence of any provision clearly interdicting the right; and there is a strong disposition and tendency in the courts of chancery to apply this rule to defaults in the payment of annual accruing interest. 2 Jones, Mortg. §§ 1176, 1177. They combat the proposition, often taken by counsel, that such interest ought not to be considered in the light of an installment of the principal, but they assert that interest unpaid becomes principal pro tanto. In Seaton v. Twyford, L. R. 11 Eq. 591, there was a loan of £400, by way of mortgage, at 5 per cent., not to be called in for five years. Judgment at law was sought by the mortgagor to be enjoined. Inter alia, the chancellor observed:

"It is not, in my opinion, open to question that, if the case were taken into chambers for the purpose of preparing a mortgage deed under such decree as I have mentioned, the mortgage would not be in the most ordinary form, giving five years to pay the mortgage money, but making it a condition of that postponement that the interest, in the mean time, should be paid. The failure to pay the interest in a mortgage prepared in the most ordinary form would release the mortgagee from the necessity of waiting five years before he exercises such powers as a mortgagee possesses. The mortgagor who stipulates that he shall have five years to pay the mortgage money must, of necessity, whether it is expressed or not, undertake at the same time that, if he fails to do that which is incumbent upon him during the period of five years to do, the restrictions upon the mortgagee (that is, to wait five years on the mortgagor) should cease."

See, also, Edwards v. Martin, 25 Law J. Ch. 284; Bank v. Chester, 11 Pa. St. 292; Richards v. Holmes, 18 How. 145, 146.

This mortgage recites the two notes,—one payable in five, the other in ten, years, with interest per annum,—and it specifically requires the maker to pay said notes, "and all interest that may be due thereon, according to the tenor and effect of said notes." While the word "he" occurs in the conditions inadvertently instead of "notes," the clear meaning and import is that if the said notes, "when they become due and payable according to the tenor and effect thereof," should not be paid, the right to foreclose should attach. These notes might have been transferred separately to different purchasers. In such case, would not the default in the payment of the first note at maturity have been a failure to pay when the same became due and payable according to the tenor and effect thereof? The holder would have been entitled to foreclose, and the proceeds of the sale thereunder would be applied, first, to the satisfaction of the first note. Buford v. Smith, 7 Mo. 489; Mitchell v. Ladew, 36 Mo. 531; Huffard v. Gottberg, 54 Mo. 271. Construing this mortgage in the light of the whole transaction, this objection is overruled.

5. We are next brought to face the question as to the character and extent of the decree to be rendered where the holder of all the notes proceeds to foreclosure on default of the first, but before maturity of the last, note. In the absence of a provision in the mortgage that a default in the one shall render the others due for the purpose of foreclosure, there being no statutory regulation on the subject in this state, I understand the chancery rule to be that a decree of foreclosure will go for the amount of the debt due, and a sale will be decreed of so much of the mortgaged premises as will be sufficient to satisfy the amount due, and the decree will stand as a security for the remaining installments as they become due; but, if the property be not susceptible of division into parcels without injury to the whole, it may be sold as an entirety, and any surplus realized beyond a sum requisite to satisfy the debt due will be returned into court, subject to application by the chancellor. In such case, in the conservation of the best interests of all concerned in the fund, the chancellor will at once direct its application to the liquidation of the deferred installments, with such rebate of interest thereon as may be just and equitable. King v. Longworth, 7 Ohio, 585; Peyton v. Ayres, 2 Md. Ch. 67; Brinckerhoff v. Thallhimer, 2 Johns. Ch. 486; Olcott v. Bynum, 17 Wall. 62, 63; Railroad Co. v. Fosdick, 106 U. S. 68, 69, 1 Sup. Ct. 10. To this end the chancellor may refer the matter to a master to report upon the divisibility of the land into parcels, and its value, as to whether it would be probably sufficient to so satisfy the whole debt, and the like; in short, the chancellor, in the exercise of a wise discretion, will, in the particular case, make such decree as, in his judgment, will best subserve the rights and interests of all parties concerned. The evidence taken in this case obviates the necessity of a reference to a master. As the respondent Howard holds 160 acres of the land under the Renos, subject to complain-

ants' mortgage, it is equitable to direct that the portion of the premises covered by the mortgage not claimed by him should first be sold under the decree herein, as the same is practically segregated from the 160 acres occupied by Howard, and that the latter should be sold, if necessary, to satisfy any balance due the complainants, according to respondent Howard, of course, a reasonable time to satisfy any balance on complainants' debt after sale of the other portion of the premises, and also giving to him the right of election as to whether the 160 acres shall be sold in lump or parcels.

6. W. A. Reno being unmarried at the time of the execution of the notes and mortgage and their transfer to complainants, there is no foundation for the claim set up in Howard's answer respecting a homestead right in the land arising on the subsequent marriage of W. A. Reno.

7. The only remaining question of importance to be answered is as to the sum for which the mortgage lien shall be enforced against the lands. The general rule is that the pledgee of a note and mortgage is, on default, permitted to recover the full value of the security, holding the surplus for those having equities therein. 2 Rand. Com. Paper, §§ 795-797. He holds as a trustee, and should take action against the maker, W. A. Reno, for the whole sum due for the protection of John W. Reno, and the surplus on a foreclosure sale, if any, after satisfying complainants' debt, would go in equity to the respondents, who have acquired all the title and estate in the land of said Reno. Prima facie, the amount called for on the face of the notes executed by J. W. Reno to complainants, to wit, $5,000, and interest, is the sum which the complainants are entitled to have in this action. But they reduced their claim to judgment at law, and the notes became merged therein. If it be conceded that the respondent Howard is not precluded by said judgment, is he in a position to show, as is claimed in argument by his counsel, that a part of the consideration of the notes executed by John W. Reno was for usurious interest? It may be conceded, for the purposes of this case, that a junior incumbrancer has an equitable right to come into chancery to redeem against a prior lienor, and to have the amount thereof reduced to the extent of the usury injected into the transaction. Perrine v. Poulson, 53 Mo. 309. But this respondent has not put himself in a position to avail himself even of such questionable equity. He does not admit the complainants' right to any lien whatever; nor does he offer to redeem for the sum justly due; nor, indeed, has he tendered any proper issue of usury in his plea. The only and entire allegation is contained in the following hypothetical paragraph:

"If it be true that the complainants did acquire or receive possession of any notes described in the alleged mortgage of said lands by William A. Reno to John W. Reno, yet this defendant avers that complainants did so acquire possession of said notes and mortgage by virtue of an illegal and usurious transaction, and not in good faith or for value."

What transaction, and how was it usurious? This is a mere statement of a conclusion, and not the statement of an issuable

fact. It is slander without the actionable words. Beyond all this, "the purchaser of an equity of redemption cannot set up usury as a defense to a bill brought for foreclosure, especially if the mortgagor has himself waived the defense." De Wolf v. Johnson, 10 Wheat. 367. Furthermore, this being a contract made and to be performed, as appears on the face of the notes, in the state of Tennessee, it is to be judged of by the statutes of that state respecting usury. De Wolf v. Johnson, supra. The Code of Tennessee (section 2707) provides that "a defendant sued for money may avoid the excess over legal interest by a plea setting forth the amount of the usury;" and following sections require that the plea shall be verified by affidavit, etc. The Code permits recovery for the principal debt with 6 per cent. interest, and that is precisely the amount for which complainants obtained judgment in the action at law against Reno, and this is the amount the decree herein will direct to be paid to complainants. Decree ordered for complainants, conformably to this opinion.