CARRIE A. DOELLER *v.* MORTGAGE GUARANTEE COMPANY ET AL.

[No. 39, January Term, 1934.]

*Decided April 3rd, 1934.*

502

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James Charles Byrne* and *Frederick H. Hennighausen,* for the appellant.

*James Thomas,* with whom were *Knapp, Tucker & Thomas* on the brief, for the Mortgage Guarantee Company, appellee.

OFFUTT, J., delivered the opinion of the Court.

On December 16th, 1927, the Club Apartments Company, a Maryland corporation, executed to the Mortgage Guarantee Company, a Delaware corporation, herein called the guarantee company, a mortgage on certain property located at the northeast corner of St. Paul and Eager Streets in the City of Baltimore to secure the repayment of $315,000, together with the interest thereon payable quarterly at the rate of six per cent. per annum. The mortgage contained the usual "Assent to a Decree" and "Power of Sale" clauses, and the principal sum secured by it was payable at the expiration of ten years from the date thereof.

On May 9th, 1930, in consideration of $2,500, the mortgagee assigned to Carrie A. Doeller, herein called Doeller, an undivided 250/315,000 share in that mortgage, and on the same day it executed to her a policy of guaranty under which it guaranteed the repayment of said sum of $2,500, together with the interest thereon to accrue. Under that

instrument the guaranty company was constituted the exclusive agent of Doeller for the collection of the interest due her under the mortgage and assignment, and for its services it was to retain one-twelfth of each interest installment, or one-half per cent. The policy also contained this clause: "That until revocation by a written notice to it, the Company shall have full power and authority, in its own name, but for the benefit of the insured, and all other owners of undivided shares in the mortgage (a) to take all steps necessary to the protection of the common investment; (b) to collect in due course of maturity the mortgage debt and any part thereof, executing all proper releases and remitting to the insured his proportionate share."

On February 14th, 1933, the guarantee company addressed to the holders of its "5½% Guaranteed First Mortgages" an "open letter," in which, after setting forth at some length the distressing effect of the economic and financial depression on real estate values, as well as upon the ability of mortgagors to meet their obligations, it solicited their approval of a plan which would extend at the option of the guarantee company the maturity of the mortgages five years, and would permit the guarantee company to retain from interest installments one and one-half per cent. instead of the one-half of one per cent. authorized by the policy of guaranty. On August 22nd, 1933, James Charles Byrne, an attorney at law, addressed as on behalf of Doeller a letter to the guarantee company notifying it that Doeller revoked its agency for her, and that she would in future collect the interest and principal due her under the mortgage directly from the mortgagor. On the same day Bryne wrote to the Club Apartments Company a letter, in which, among other things, he stated: "We have this day revoked the agency of the Mortgage Guarantee Company, and hereby instruct you to make all future payments, as to her share in said mortgage, direct to the undersigned, as Attorney."

On August 23rd, 1933, the guarantee company, in a reply signed by Thomas B. Marshall, its vice-president, to Byrne's

letter to it, said in part: "I write to acknowledge receipt of your letter of the 22nd listing mortgage certificates and stating that you will collect direct from the mortgagors the amount of interest and principal falling due under these certificates, and that you hereby revoke the agency of the Mortgage Guarantee Company to do so. This action discharges the Mortgage Guarantee Company's liability under the certificates. Of course, I am very sorry that you have decided to proceed in this manner. * * * However, my opinion is that this is undoubtedly your legal right if you wish to withdraw these mortgages and handle them yourself, because the Maryland mortgages are in form an absolute recordable assignment which gives the assignee legal title to an actual part in a particular mortgage."

In addition to Doeller, Byrne also represented other persons holding fractional interests in mortgages guaranteed by the guarantee company, and on behalf of one of those clients he instituted proceedings in the Circuit Court of Baltimore City for the foreclosure of a mortgage on the St. Paul Court Apartments, the principal and interest of which the guarantee company had guaranteed. On September 8th, 1933, the guarantee company filed in the same court, under the assent to a decree contained in the mortgage, a petition for the foreclosure of the mortgage on the Club Apartments Company's property, and upon that petition Clarence A. Tucker, an attorney at law, was appointed trustee to make the sale.

On September 16th, 1933, an installment of interest under that mortgage became due and payable, and on the same day the interest due Doeller was received by the guarantee company, which at once returned it with a request that a check for it be drawn to the order of Byrne and returned to George M. Englar, a vice-president of the guarantee company. That was done, and he on September 19th, 1933, sent it to Byrne, who refused to receive it because, he said, the mortgage was in default for nonpayment of the interest on September 16th, 1933.

On September 9th, 1933, Byrne called upon Tucker, the trustee appointed on September 8th, 1933, and, although there was at that time no default of any kind on the part of the mortgagor, urged him to advertise and sell the Club Apartments property and other properties affected by other decrees passed in foreclosure proceedings instituted by the guarantee company to foreclose mortgages which it held on them, and in which Byrne's clients held small fractional interests. At that interview, Byrne testified, the trustees told him that the several foreclosure proceedings had been instituted for the purpose of holding "a whip hand" over them, and that it was not his intention to sell the properties at that time. Tucker, the trustee, denied the use of that precise phraseology, but admitted that he had told Byrne "that his action as trustee in connection with the St. Paul Court Apartment showed the wisdom of holding some kind of a check over him if it could be gotten."

Three days later, on September 19th, 1933, the day on which Byrne refused to accept a check for the interest due Doeller on September 16th, Doeller filed in the foreclosure proceedings of the Mortgage Guarantee Company against the Club Apartments Company a petition in which, after alleging in substance the facts narrated above, she prayed: "1. That a co-trustee be appointed in the above entitled case. 2. That the said trustee be directed to advertise immediately the property secured by said mortgage for sale in accordance with the terms and conditions of said decree. 3. And for such other and further relief as their case may require." Upon that petition a show cause order was passed, and on September 29th the guarantee company filed an answer in which, after sundry irrelevant and immaterial averments, it alleged as a defense that it denied "that the obtaining of a decree in this case and the failure of said trustee to sell, up to this time, the mortgaged premises is an attempt on the part of your respondent to force petitioners or anyone else to do anything, but its action in the premises was moved simply and solely by what it regarded as the

best interests of all the parties holding any interest in said mortgage.''

The case came on for testimony and a hearing, and at the conclusion of the hearing the court signed an order dismissing the petition. This appeal is from that order.

In addition to what has been stated, there is nothing in the record that is material to the questions raised by the appeal except the following, which occurred in the cross-examination of Byrne: "You have referred to calling on the trustee and certain conversations you had with the trustee. Did you mean myself? A. Yes. Q. When you called upon me it was in the early part of September, wasn't it? A. Yes. Q. September 9th, I think. At that time there was not any default at all in the mortgage of the Club Apartments, was there? A. I don't know. The Mortgage Guarantee Company handled all matters in connection with it. I could have assumed by taking out a decree that there was a default, which I did not. I knew a decree could be taken out prior to a default, but I had no definite knowledge as to whether or not there was a default. Q. You knew, so far as taking out decrees, you could do that immediately after the mortgage was made, if you felt so disposed? A. Yes. Q. The only default you claim with respect to the Club Apartments is that you got your check on September 19th, when it ought to have been received on September 16th, 1933? A. That is the only default that we are now claiming, all that we know of.''

The first question presented is whether there was any default on the part of the mortgagor in the payment of interest due the appellant. It is conceded that there was no default other than that, so that, if there was no default in the payment of interest, there was no default at all, the trustee named in the decree was wholly without power to sell the property, and his refusal to sell was not a matter of discretion, but of compulsion. Under the peculiar practice authorized by Code Pub. Loc. Laws, 1930, art. 4, secs. 720, 721, the decree directed that the mortgaged property be

sold "at or after any one of the periods limited in the mortgage filed for the forfeiture of said mortgage." Such a decree may properly be entered at any time after the execution of the mortgage, whether there is or is not at the time a default on the part of the mortgagor in respect to the covenants of the mortgage, but there can be no sale under the decree until there is a default (*Miller, Equity Proc.*, sec. 477; *Black v. Carroll*, 24 Md. 256; *Schaeffer v. Amicable Company*, 47 Md. 127), which must be shown by a statement of the mortgage claim remaining due, verified by the oath of the mortgagee, his executors, administrators or assigns, and filed in the court in which the proceedings are pending. Code Pub. Loc. Laws, 1930, art. 4, sec. 721.

The principal debt secured by the mortgage in this case will not by its terms become due and payable until 1937. It is not denied that the mortgagor has performed all covenants in the mortgage to be performed by it except that relating to the payment of interest, and the only default alleged in respect to that covenant is that the interest due Doeller was not paid personally to her or to Byrne on the 16th day of September, the day on which it became due and payable. But it also appears without contradiction that on that day the interest was paid to the guarantee company, which had previously, as the agent by her appointment, collected it for Doeller, but that it was not paid or tendered to Doeller or to Byrne until September 19th. So that the question is whether, upon the facts stated, the failure of the mortgagor to pay the interest due to Doeller or Byrne on September 16th was such a default as justified the foreclosure of the mortgage.

The appellant contends, and we think properly, that, if the mortgagor delayed paying the interest beyond the day on which it became due and payable, the entire mortgage debt became due and payable, and that the length of the delay was not material. *Willsie on Foreclosure of Mortgages*, sec. 43; 41 *C. J.* 845. For, if the default existed at all, it was by the agreement of the parties a complete, indivisible, and

consummate thing, and unless affected by the doctrine of waiver, its mere duration would not affect its qualities, incidents, or effect. While the strict enforcement by the mortgagee of the rights flowing from it may appear, and, indeed, may be, harsh and oppressive, that consideration cannot be regarded as material in such a proceeding as this, where the default rests upon the deliberate agreement of the parties, where the right to the remedy and the remedy itself are definitly fixed by statute, and where the duty of the court to recognize the remedy and the mortgagee's right thereto is mandatory.

Under the terms of the mortgage, the interest was payable to Doeller on September 16th, and the fact that the mortgagor paid it to some other person for Doeller on that day in the belief that such payment was authorized by Doeller would not excuse its failure to pay it to Doeller on that day, if in fact such payment was not authorized by her, or unless Doeller by her conduct had led the mortgagor, as a reasonably prudent and careful person, to believe that it was so authorized.

But, while the interest was payable under the mortgage to Doeller, the policy of guaranty which she had accepted provided that payments of interest due her should be collected by the guarantee company, and under that appointment it had collected the interest since May, 1930. On August 22nd, 1933, Byrne, assuming to act for her, wrote the guarantee company revoking that agency, and on the following day that company wrote Byrne accepting the revocation. On August 22nd, Byrne also wrote the mortgagor, notifying it of the revocation and notifying it to make all future payments as to Doeller's "share in said mortgage, direct to the undersigned as attorney." But at that time this proceeding was not pending, so that Byrne was not then attorney of record for Doeller therein; it nowhere appears, except from Byrne's own letters, that at that time he was her agent, nor except for such letters does it appear that she authorized the revocation of the guarantee company's

agency, or that she directed the mortgagor to pay the interest, due her, directly to her or to Byrne. Doeller personally gave no such directions to the mortgagor, and, so far as anything in the record discloses, she could at any time have repudiated Byrne's agency, and, if the mortgagor had paid the interest to him, as he directed, and it subsequently appeared that she had not authorized such payment, it would not only have been in default, but would have been compelled to pay the money to her personally, notwithstanding the payment to Byrne.

The guarantee company was not the mortgagor's agent, but the agent of Doeller, and the fact that it had accepted a revocation of that agency was not communicated to the mortgagor. And, even if it be assumed that that letter was sufficient to put it on inquiry as to the continuance of the guarantee company's agency, it was not sufficient, in the absence of any direct authority from Doeller, to require it to pay the interest to Byrne. And, although the guarantee company accepted Byrne's letter as a revocation of its agency, it does not appear that Doeller personally revoked the agency, nor that she authorized Byrne to revoke it for her, nor that prior to this proceeding she directly or indirectly ratified or approved the act of the guarantee company in accepting a revocation of it. If she desired the interest paid directly to her or to some person designated by her other than the guarantee company, she should have personally so notified the mortgagor, or have furnished some evidence of Byrne's authority to act for her. She did neither, nor did she furnish it with her address nor designate any place at which the payment might be made, and, while a mortgagor will ordinarily be charged with knowledge of the residence of the mortgagee, yet where the mortgage has been assigned, as in this case, to a number of persons, it would be unreasonable to require the mortgagor at its peril to know at all times the residence of each assignee.

Appellant's contention that the payment to the guarantee company on September 16th was wholly unauthorized and

of no effect is apparently based upon the theory that, because he was an attorney at law, Byrne's letter to the appellee was itself sufficient proof of Byrne's agency and authority to revoke the agency of the guarantee company and to protect the mortgagee in paying the interest due Doeller to him. But, "when the attorney is not appearing for a party in a court of justice, but his representation is for the transaction of business which would lie within the scope of an ordinary agency which any person is capable of transacting, the presumption of authority obtaining in court, arising from his license, and because he is an officer of the court, cannot be claimed. Strangers cannot safely deal with him on the faith of such representation, and they have the right to demand from him some reasonable and satisfactory evidence of his authority—other evidence than his mere assertion." 2 R. C. L., p. 980; *Howard v. Carpenter,* 11 Md. 259, 281; 6 C. J. 656.

Under the circumstances, and in view of the facts (1) that the mortgagor actually paid the money due Doeller on the day it became due to the guarantee company which had theretofore acted as her agent, (2) that she failed (a) either in person or in writing to notify the mortgagor that the agency had been revoked or (b) to furnish it with any evidence of Byrne's agency which would have protected it in paying the interest to Byrne, as was done in *Johnson v. Young,* 82 Wis. 107, 51 N. W. 1095, (3) that Byrne's letter neither informed the mortgagor of Doeller's address, nor supplied any evidence of his authority to receive the interest due Doeller, (4) that the money due Doeller was promptly paid to Byrne, whose agency she subsequently recognized in her petition filed in this proceeding, it would seem that the delay in paying the interest to her was as much her fault as that of the mortgagor, and that she is estopped from insisting that the mortgage was in default because the payment was made, on the day on which the interest was due, to her former agent instead of to Byrne. For, while Byrne may in fact have been authorized by her to accept the payment, no

evidence of that fact was given the mortgage prior to September 16th.

The second question presented by the appeal is whether the trial court erred in refusing to grant appellant's prayer that it appoint a cotrustee to act with Tucker in selling the mortgaged property.

It was held in *Williams v. Williams,* 7 Gill. 302, that, in passing chapter 181 of the Acts of 1833, now codified as Code Pub. Loc. Laws, 1930, art. 4, sec. 720, *el seq.,* the Legislature did not intend to limit the general jurisdiction of courts of chancery "in case of mortgage," and that the act, while pointing out a summary mode of procedure by which the mortgagee might arrive at a decree, did not limit the general jurisdiction of such courts over that class of cases, but merely dispensed with the subpoena and answer by substituting therefor the assent of the mortgagor. *Miller's Equity Proc.,* sec. 475. And in *Mizen v. Thomas,* 156 Md. 320, 144 A. 479, it was decided that the trustee named in the decree in cases under that act was appointed by the court, which was not bound to accept any nomination by the mortgagee, that he was an officer of the court, answerable to it for the discharge of his duties, and that his acts done in the discharge of his duties as trustee were done as the agent of the court, and not as the agent of a particular party. The office of a trustee appointed under such a decree, in its qualities and incidents, is therefore the same as that of any other trustee appointed by a court of chancery to execute its decree.

It was held in *Re Battin,* 89 N. J. Eq. 144, 104 A. 434, that in appointing substitutes for trustees the court was not obliged to name the same number as those designated in the trust instrument, but that "the number of trustees and their identity is a matter of pure judicial discretion." In 19 *R. C. L.* 571, it is said that the appointment of a person to sell mortgaged property under foreclosure proceedings rests in the sound judicial discretion of the trial court, subject to review only in cases of abuse. In reference to the appointment of receivers, it is said in 53 *C. J.* 74, that: "The num-

ber of receivers to be appointed rests within the discretion of the court. Two or more joint receivers may be appointed; but the appointment of more than one should not be made in the absence of any necessity or reason therefor." Upon those analogies, and upon principle, it is clear that the number of trustees to be appointed to execute the decree of the court in such a case as this is a matter resting in the sound discretion of the trial court, and that its exercise of that discretion will not be reviewed on appeal, unless it appears that there has been a palpable abuse of it.

But in this case the contention of the appellant is that the trustee appointed, in the interest of persons other than the appellant, willfully refused to discharge the duties imposed upon him by the decree. If that contention is well founded, it would be a reason for the removal of the trustee, and not for the appointment of a cotrustee, who might be hampered in the discharge of his duties by the necessity of co-operating with a trustee who has already defaulted in the performance of his duties. But from what has been said it follows that there is no basis for that contention. It rests upon the fallacy that the mortgage was in default, and that therefore the trustee was obliged to proceed with an immediate sale of the mortgaged property. But, since there was no default, he had no power to sell it, and his refusal to proceed rested, not on an arbitrary exercise of discretion, but upon a lack of power. In view of that conclusion, we are not called upon in this case to express any opinion as to the nature or extent of the trustee's discretion in respect to the time within which he should sell or offer for sale the mortgaged property in cases where there has actually been a default.

It follows that the order from which this appeal was taken was properly passed, and it will therefore be affirmed.

In view of that conclusion, it becomes unnecessary to refer at any length to the contention of the mortgagor that the assignee, the appellant, was powerless to revoke the agency of the guarantee company. It is sufficient to say that not only is that power plainly implicit in the language of the guar-

anty contract, but that that company finally put the question at rest by accepting the revocation in its letter to Byrne of August 23rd, 1933. It is true that Byrne's authority to revoke is not shown, but the guarantee company, after conceding that power, and admitting Doeller's right to revoke, and claiming the benefits of the assumed revocation, is not now in a position to question it.

*Order affirmed, with costs.*