BETTER ET UX. *v.* WILLIAMS

[No. 43, October Term, 1953.]

*Decided February 10, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Eugene Hettleman* for the appellants.

*J. Mayer Willen,* with whom were *Tucker R. Dearing* and *Josiah F. Henry, Jr.,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City sustaining exceptions to a sale reported by a trustee under a mortgage foreclosure proceeding instituted on November 25, 1952, and vacating the sale. The decree was based on the Chancellor's finding that the mortgagor was not in default on the date of the first advertisement of sale, on December 17, 1952, or on the date of the sale, January 8, 1953, and that any prior defaults had been waived by the mortgagees. The appellee has filed a motion to dismiss the appeal, on the ground that material evidence is omitted from the appellant's appendix. We shall pass this point, however, as we think the case can be decided on the admitted facts.

The appellee, a practicing physican in Baltimore, purchased the leasehold property 145 W. Montgomery Street on October 6, 1951, and executed a mortgage containing an assent to the passage of a decree and a power of sale upon default, to secure a loan of $3,700, payable at the rate of $80 per month, said payments to be applied

(1) to taxes, ground rent and insurance, (2) to interest at 6% per annum, and (3) to principal. The mortgage did not contain the usual acceleration clause or any agreement maturing the entire debt upon default in payment of any instalment when due. There was a provision that if "foreclosure proceedings are filed hereon, there shall be immediately due to the attorney filing the same a fee of $75." The appellee spent over $3,000 on improvements and repairs to the property, which he occupied as an office and residence.

The first two payments were of $90, and not $80, so that on November 6, 1952, when Dr. Williams, through inadvertence he claims, failed to pay the instalment then due, the amount due was $60. The proceeding was filed on November 25, together with a statement of mortgage debt showing payments of $980, and a balance of $3,166.12 then due on the mortgage principal, after allowance for taxes, ground rent, insurance and interest. On the same day the trustee sent Dr. Williams a letter reading as follows:

"Foreclosure proceedings have this day been filed on your mortgage held by Mr. and Mrs. Paul Better, who do not wish to carry the mortgage any longer. This letter is to give you notice that unless the mortgage is paid in full within fifteen days or suitable arrangements are made for the payment thereof by refinancing, this property will be advertised for sale at public auction."

On November 26, 1952, Dr. Williams sent a telegraphic money order to the trustee for $90, and a similar order for $90 on December 6, 1952. These money orders were received and retained by the trustee but not cashed. On December 9, 1952, the trustee sent the mortgagor a letter reading:

"In view of your two payments of $90 each Mr. Better has decided to reinstate your mortgage and not to proceed with the foreclosure. In order to do this however it is necessary that you send me by return mail $30 covering court costs and on account of the fee in the mortgage."

At the time this letter was written, Dr. Williams had

overpaid the instalments due by $40. He did not comply with the condition stated, but continued to send checks or money orders for $90 as each subsequent instalment fell due.

On January 5, 1953, the trustee wrote the appellee that since "nothing further was heard" in response to his letter of December 9, 1952, the property had been advertised for sale on December 17. "Mr. Better is still willing to reinstate the mortgage upon payment of the foreclosure costs, which are at present:

| | |
|---|---:|
| Trustees bond | $ 16.00 |
| Court costs | 16.50 |
| Auctioneer | 10.00 |
| Advertising | 39.44 |
| 1/2 trustees commissions | 85.00 |
| | $166.94 |

to avert sale, payment in this amount must be in my office immediately."

The appellee did not reply to this letter, and the property was sold at public auction on January 8 and purchased by Paul Better for $3,000. The sale was reported and the appellee filed exceptions.

The appellee contends that the failure of the appellants to return the payment tendered on November 26 and the subsequent payments tendered, constituted a waiver of the default of November 6, or raised an equitable estoppel against the trustee's proceeding with the sale. The appellants contend that since the money orders were not cashed there was no waiver or estoppel. We think that neither of these contentions goes to the root of the matter.

It is clear that there was a default in the payment of the $60 balance of the instalment due November 6, 1952, and it is conceded that the appellants had a right to institute proceedings on November 25, even though no prior notice was given. It may well be that proceedings could have been instituted without any default at all, although a decree of sale is conditioned upon

default. Cf. Section 6(a), Article 66, Code of 1951, and *Doeller v. Mtge. Guarantee Co.,* 166 Md. 500, 507. But it does not follow that the default in the payment of one instalment made the entire balance of the mortgage fall due, as claimed in the statement of mortgage debt. The mortgage here did not contain an acceleration clause, as was the case in *Doeller v. Mtge. Guarantee Co., supra.* We have held that an acceleration clause is valid and enforceable, *Lotterer v. Leon,* 138 Md. 318, although it may be waived and in some cases there must be positive evidence of an election by the mortgagee to exercise it. *Kleiman v. Kolker,* 189 Md. 647.

While authority on the point seems to be scanty, it is generally recognized that acceleration cannot be implied in the absence of a clause to that effect in the mortgage. *Olcott v. Bynum,* 84 U. S. 44; *Howell v. Western R. R. Co.,* 94 U. S. 463; *Hawkinson v. Banaghan,* 89 N. E. 1054 (Mass.) ; *Fox v. Pinson,* 289 S. W. 329 (Ark.) ; 1 *Glenn, Mortgages,* § 91; 1 *Wiltsie, Mortgage Foreclosure* (5th Ed.) § 44. Any other conclusion would render the insertion of the clause meaningless and unnecessary, and make a new contract for the parties. In the instant case we hold that the balance of the mortgage did not become due upon the default in the payment of the instalment due November 6.

This conclusion is fortified by the statement in *Salmon v. Clagett,* 3 Bland 125, 179, affirmed on other grounds in *Clagett v. Salmon,* 5 G. & J. 314, that where a bill is filed upon default in payment of one instalment "the debtor may, however, prevent a foreclosure, or sale, by paying the instalment then due." To the same effect see *Peyton v. Ayres,* 2 Md. Ch. 64, 67. In *Clark v. Abbott,* 1 Md. Ch. 474, 477, it was said that although a mortgagor may "by paying the interest and costs due, stay the sale, the decree of foreclosure will remain as a further security to enforce the payment of the future interest and the instalments of the principal, as they respectively become due." In *Wylie v. McMakin,* 2 Md. Ch. 413, 417, it was said that "the court will not permit

the sale to proceed, if the mortgagor, or party holding the equity of redemption, comes before the sale and brings in the amount due, with interest and costs, and then the decree is allowed to stand, to enforce payment of the remaining debt, with interest, as it becomes due. *Campbell v. Macomb*, 4 Johns. Ch. Rep., 534. [Ch. Kent, 1820]."

It is well established that a tender of the amount due will prevent a foreclosure sale, since the mortgagor has an unqualified right to redeem. *Manor Coal Co. v. Beckman*, 151 Md. 102; *Kent Building Co. v. Middleton*, 112 Md. 10; 1 *Glenn, Mortgages*, § 104. In the instant case there was a tender of more than the $60 due on the day following the institution of proceedings, and there has been a tender of $90 as each succeeding instalment became due.

It is argued, however, that since there was no tender of costs, the condition for arresting the sale was not met. But it is clear that the tender of $90, when the balance due was only $60, placed in the hands of the appellants a sum sufficient to satisfy the court costs incurred up to that time, which they subsequently listed as $16.50. Indeed, when they offered to reinstate the mortgage on December 9, "in view of your two payments of $90 each," the overpayment was $40, and their attempt to require payment by return mail of "$30 covering court costs and on account of the fee in the mortgage," was quite unjustified. Likewise, their demand for payment of $166.94, covering costs incurred subsequent to the tender cannot be sustained. It is significant that in this demand they made no mention of the attorney's fee and may be deemed to have abandoned it even if we assume, without deciding, that they would otherwise have been entitled to claim it.

Under all the circumstances we think the Chancellor was not in error in setting aside the sale and ordering that all costs connected with the sale be paid by the complainants.

*Decree affirmed, with costs.*