## C. DANIEL SAUNDERS *v.* JANE L. STRADLEY

[No. 193, September Term, 1974.]

*Decided March 12, 1975.*

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

*C. Daniel Saunders* for appellant.

No appearance or brief for appellee.

POWERS, J., delivered the opinion of the Court.

Prior to 15 December 1971, Kenneth M. Saunders and

Catherine O. Saunders, his wife, were the owners of a tract of land in Cecil County described as containing 38.50 acres, improved by a dwelling house and a barn. On that date they settled on a sale of the property to Jane L. Stradley, a real estate investor. The price was $100,000. From the record it appears that $29,000 was paid in cash at settlement and the balance of $71,000 by a note secured by a purchase money mortgage given by the buyer to Mr. and Mrs. Saunders. It was provided that $21,000 of the deferred purchase price, plus interest, was payable on 10 January 1972, and the remaining $50,000 was payable in monthly installments of $385.91, principal and interest, beginning on 15 January 1972, with the entire balance to be paid on or before 15 December 1981.

On 10 December 1973, C. Daniel Saunders, as assignee of the mortgage, filed in the Circuit Court for Cecil County an order to the clerk to docket a suit to foreclose the mortgage.

According to the advertisement later filed in the case, the sale was scheduled to be held on Saturday, 29 December 1973. On 21 December, Mrs. Stradley filed in the case a Petition To Enjoin Foreclosure Sale. The petition was signed by her attorneys, and signed individually by her. It contained her certificate that its contents were true and correct. In the petition she alleged that she had not received notice, as required by Maryland Rule W74, and alleged that she had made the payments required under the mortgage and was not in default or arrears. On the same day, the Circuit Court for Cecil County signed an order enjoining the assignee "from proceeding with said mortgage foreclosure sale until the matter is heard fully on its merits by this Court."

A hearing on the merits was held on 9 January 1974. Mr. Kenneth Saunders and Mrs. Stradley were the only witnesses who testified at the hearing. Several exhibits were offered and received in evidence. They related to the making of the monthly payments on the mortgage, the payment of state and county taxes on the property, and an insurance policy on the improvements.

Checks by which many of the monthly payments were made showed that each was dated on the 15th of the month. Mrs. Stradley testified that she invariably mailed each payment on the same day that she wrote the check. She said also that a few of the checks were written and mailed before the due date. Mr. Saunders, on the other hand, said that each of the checks was received several days, and up to 10 or 11 days, after the due date.

The August 1973 payment seems to have precipitated the difficulties which led to the foreclosure action. Mr. Saunders, then living in Florida, wrote Mrs. Stradley on 22 August informing her that he had not received the payment due on the 15th, and commenting generally on the fact that the payments were always late. He suggested that she mail them several days early to allow for mailing time. The check, dated 14 August, and never cashed, was eventually received by Mr. Saunders on 20 September. The postmark on the envelope indicates that it was mailed in August 1973 and, while the second digit of the date is not entirely legible, it could be read as the 16th, and no later than the 19th of August.

All checks tendered for the monthly payments thereafter were rejected. The record indicates that from about that time on, there was correspondence between attorneys for the parties, but no copies of that correspondence are in the record.

Mrs. Stradley placed in evidence as an exhibit the bill rendered by the Treasurer of Cecil County for county and state taxes on the property for the year July 1, 1973 to June 30, 1974. The bill stated that the tax was due July 1, 1973, and contained a warning that, "all taxes unpaid on October 1st after due date, will draw interest from September 1st, at the rate of $2/3\%$ per month". The bill was receipted, showing payment of the tax and interest on 26 December 1973. Mrs. Stradley testified that she paid the bill on that day. She explained that the interest on the taxes was less than she would have to pay somewhere else and that she normally paid the taxes late so that she could make use of the money.

Questions by counsel and colloquy between them during the course of the examination of the witnesses, indicated that in early October a letter was written on behalf of Mr. and Mrs. Saunders referring to the lateness of the payments and non-payment of taxes as reasons for invoking the acceleration clause of the mortgage and for foreclosing.

In the typewritten portion of the mortgage, which details the indebtedness and the terms of payment, there is an acceleration clause which reads:

> "In the event of nonpayment of any installment of principal or interest, when due and payable, the whole mortgage indebtedness shall, at the option of the Mortgagees, become due and payable."

In that portion of the mortgage which is largely printed form, there are covenants to pay the mortgage debt and interest in accordance with the terms and conditions of the mortgage; to pay, when due, all water rents, ground rents, taxes, assessments, and other charges; a covenant against waste; and a covenant to keep the improvements on the property insured and to cause a standard mortgagee clause to be attached to such policies. The mortgage contains a further covenant and agreement,

> "That, in the event of any default in any covenant of this mortgage, * * * then the whole mortgage indebtedness shall, at the option of the Mortgagee, be and become due and payable * * *."

The mortgagor authorizes the mortgagee or his assigns, in the event of any default in any of the covenants of the mortgage, to sell the mortgaged property.

Another provision is that the mortgagee may at any time waive any of the covenants or conditions, in whole or in part, without in any way releasing the mortgagors from any of the covenants or conditions of the mortgage.

At the conclusion of the evidence offered at the hearing, and after arguments of counsel, the chancellor found that Mr. Saunders had, at least by implication, accepted the mail service as the means of receiving the checks. The chancellor

then stated that under those circumstances, the date of mailing is the date of payment. He concluded that all of the payments in issue were made, at least in that manner, on or before the due date, and that there was no default in the mortgage installment payments.

The chancellor rejected the argument concerning Mrs. Stradley's default by failure to pay the real estate taxes on time. He did so by saying that it wasn't the non-payment of taxes that caused the bringing of this foreclosure proceeding. Undoubtedly, the judge made that comment because of the wording used by the assignee in his order to the clerk, which initiated the foreclosure case as far as the court records are concerned. The order directed the clerk to docket the suit as titled for foreclosure of the mortgage, and contained the phrase, " * * * default having occurred by reason of non-payment of principal and interest in the terms thereof * * *."

The chancellor announced that he would sign a decree permanently enjoining sale of the property under foreclosure. Such a decree was signed on 11 January 1974, and filed on 14 January. It decreed:

> "That the said C. Daniel Saunders, Assignee, be and he is hereby enjoined from foreclosing the property of the Respondent, Jane L. Stradley, as set out in said proceedings for any alleged violations up to and including the date of the hearing on January 9, 1974, * * *."

We have noted that the petition to enjoin the foreclosure contained an allegation that the petitioner had not received notice as required under Rule W74. The complete reference is Maryland Rule W74 a 2 (b). That subsection requires that in addition to the publication of the notice of sale, the person authorized to make the sale shall send a notice of the time, place, and terms by registered mail to the mortgagor, not earlier than 20 days and not later than 5 days before the date of sale. Although the record does not affirmatively show it, there is an indication in the record that such a notice was sent and returned undelivered. It is obvious that

the purpose of the notice was in fact accomplished because the mortgagor's petition to enjoin the sale was mailed to the assignee more than five days before the date of sale. We assume that there was no issue on this point before the chancellor because he did not decide it and, since it was not decided below, it is not before us in this appeal. Maryland Rule 1085.

Likewise, there is nothing properly before us in this appeal concerning the propriety of the order signed by the judge on the same day the petition to enjoin was filed, in which order the assignee was enjoined from proceeding with the foreclosure sale. While it was not so labeled, the order constituted an ex parte injunction. Under Maryland Rule BB72 a, an ex parte injunction shall not be granted unless it appears that immediate, substantial, and irreparable injury will result to the applicant before an adversary hearing can be had. This subsection also contains a provision that the judge may, in his discretion, communicate informally with the person against whom the injunction is sought, or his attorney.

Subsection b of Rule BB72 requires that an ex parte injunction shall give the adverse party leave to move for a hearing on not more than two days' notice, and that it shall expire by its terms within a time which shall not exceed ten days. Rule BB75 provides that such an injunction shall not be issued unless a bond is filed in such amount as may be determined by the court, with such surety as may be approved by the clerk or with other security approved by the court. The Rule also provides that in the case of extraordinary hardship the requirement of surety or other security may be dispensed with, but there is no authorization in the rule to dispense altogether with the requirement that a bond be filed.

For the very reason that questions of whether an ex parte injunction should or should not be issued are ordinarily moot before the case can reach an appellate court, the equity courts should be especially alert to see that the parties comply with the applicable rules before an ex parte injunction is ordered. We call attention to the fact that the

order entered below was not based on a showing that irreparable injury would result before an adversary hearing could be had. The order was entered 8 days before the scheduled sale and, even considering intervening holidays at that time of year, we think an adversary hearing could have been scheduled and held. We note that the record does not show that there was any attempt to communicate informally with the assignee. The order did not give the adverse party leave to move for a hearing on not more than two days' notice, and it did not state by its terms that it would expire on a specified date. The order did not require the filing of any bond, with or without surety or other security.

In spite of its infirmities the ex parte injunction became moot when the time for the scheduled sale of the property passed. It is only the final injunction, ordered by the court on 11 January 1974, which is before us in this appeal.

We now determine whether the assignee should or should not have been enjoined from foreclosing for any alleged covenant violation up to the date of the January 9th hearing. To do so, we must analyze in more detail just what a foreclosure proceeding is in the law of Maryland, how and when issues are raised, and whether the assignee in this case, by any pleading he filed, limited the issues by excluding or waiving failure to pay taxes when due as a default. If the assignee did not so limit the issues, then the chancellor erred when he decided that "we can eliminate that point completely".

The subject matter of mortgage foreclosure in Maryland has always been within the ordinary jurisdictional power of the equity courts, independently of any consent by the mortgagor, or provisions of the mortgage. Only the procedure has changed.

Originally the jurisdiction of the court could be invoked only by filing a bill of complaint to foreclose the mortgage. The case followed the regular course of equity pleading. In Venable, *The Law of Real Property and Leasehold Estates in Maryland* (1892), the author says, at 215:

"After the pleadings * * * are filed, if the facts

stated in the bill are denied in the answer, evidence is taken. If the case is admitted or made out, the court passes a decree * * *."

At one time the decree was for "strict foreclosure", which simply amounted to extinguishment of the mortgagor's right of redemption. Later it became the practice for the decree to order that the property be sold, and to appoint a trustee to make the sale, which was then reported to the court for ratification.

Professor Venable goes on to discuss the more recent method of foreclosure of mortgages under a power of sale contained in the mortgage. He says, at 219-20:

> "These Statutes were not intended to confer a new or special jurisdiction on courts of equity, but merely to regulate and perfect the method of proceeding where there was a power to sell in the mortgage * * *.
>
> "In this case there is no necessity for any proceeding in court to have a trustee appointed to sell. The mortgagee or his attorney is clothed with such authority by the consent contained in the mortgage and from the filing of the bond as required by the Statute * * *. The power to sell is substituted for a decree * * *.
>
> "The proceedings are instituted by filing the mortgage or a certified copy of it and a direction to the clerk of the Circuit Court in equity, in the county where the land lies, to docket a case." [1]

And the author goes on to say, at 221-22:

> "The trustee's report of sale is his first official intercourse with the Court, and its supervisory

---

1. Professor Venable points out that the law did not even provide for any such proceeding, but that it had become the general practice, for convenience in titling papers and keeping docket entries, to file an order to the clerk to docket a case. Maryland Rule W72 c 1 now requires an order to docket. An editor's note explains that there was no statutory requirement for such an order, but it was included in the Rule because it was believed to represent the prevailing practice.

power then commences; and the Court cannot revise, confirm, ratify or reject the sale until it has been reported * * *. On such report, the jurisdiction of the Court becomes complete, and equitable principles such as are applicable to sales under decrees in other cases prevail * * *."

Miller, *Equity Procedure* (1897), after a reference to foreclosure by formal proceedings, discusses the statutes which authorize the inclusion of a power of sale in a mortgage, and the procedure to be followed when a power of sale is exercised. The author goes on to say, at 535:

"The proceeding is wholly *ex parte* and without process, and does not constitute a 'suit'. The purpose of the legislation was to provide a more expeditious and less expensive method of enforcing mortgages than the former proceedings by formal bill in equity."

The statutory authorization for including a power of sale in a mortgage is now found in Code, Real Property Article, § 7-105. It previously appeared in Code, Article 21, § 7-105, and prior to that the substantive provisions, without essential difference, were found in Code, Art. 66, §§ 5 et seq. Article 66 also included procedural provisions, but these were repealed in 1962 because procedure was then covered by Maryland Rules. The first Rule dealing with foreclosure of mortgages was Maryland Rule 1391, effective 1 January 1959. The subject matter is now covered by Maryland Rules W70 to W80.

Rule W72 c 1 provides that an action to foreclose a mortgage containing a power of sale shall be commenced by the filing of an order to docket, together with the mortgage, or a certified copy thereof, as an exhibit.[2] Rule W72 e provides that jurisdiction of the court over the mortgaged property shall attach upon the docketing of the action. Before 1959 it had always been held that jurisdiction

---

**2.** Subsection 2. of Rule W72 c relates to an action to foreclose a mortgage containing an assent to a decree, a practice formerly used only in Baltimore City, but now available throughout the State.

attached when the report of sale was filed. *Warehime v. Carroll County Bldg. Ass'n,* 44 Md. 512 (1876).

Rule W72 d says that it is not necessary that process issue or be served upon the opposite party, or that an answer be filed, or a hearing held. Rule W74 provides for the filing of a bond, the publication of notice and mailing of notice, for filing a report of the sale, and for conveyance after ratification.

None of the documents required in the course of these procedures appears to have the status of a pleading. Subsection b of W76 deals with the subject of an injunction to stay a sale or any proceedings after a sale. The rule places certain limitations on who may obtain an injunction, and provides that an injunction shall not be granted unless the petition alleges certain specified facts under oath. The rule does not specify whether an injunction may be sought by a petition in the same proceeding, or by a separate equity proceeding, and it appears that it may be done either way.

Under the former practice, when it was the filing of the report of sale which caused the jurisdiction of the equity court to attach, the Court of Appeals indicated, in *Hubbard v. Jarrell,* 23 Md. 66 (1865), that the papers filed in such a proceeding are not to be tested for sufficiency as pleadings. In that case, an exception to the sale had asserted that the report did not show that any contingency, upon which the power of sale depended, had happened. The Court of Appeals said, at 81-82:

> "But as the mortgage itself, with the advertisement of sale, was filed and constituted part of the proceedings, before an order of ratification was asked for or passed, everything was substantially complied with that was necessary to induce the proper action of the court, and to show a compliance with the law. If payment had in fact been made, or any contingency had not occurred upon which the power of sale depended, the mortgagors could show it, and thereby arrest the ratification of the sale. This objection is simply to the form of the report."

In *Northrop v. Beale*, 170 Md. 439, 184 A. 900, *cert. denied*, 299 U. S. 516, 57 S. Ct. 236, 81 L. Ed. 381 (1936), the Court considered exceptions filed below to a report of sale, and a demurrer to the exceptions. It said, at 444:

"A report of sale is not a pleading, nor is an exception to such a report, and we know of no rule by which the legal sufficiency of such an exception must be raised by a demurrer."

The Court reiterated the same point, and quoted from *Northrop v. Beale, supra*, in *Southern Maryland Oil v. Kaminetz*, 260 Md. 443, 272 A. 2d 641 (1971).

We are satisfied that an "order to docket" is not a pleading. This is so in spite of the fact that it is the delivery of the order to the clerk which gives the equity court jurisdiction over the mortgaged property when a power of sale is being exercised. But the order need not make factual allegations sufficient to show a right to proceed. No process is issued or served upon the filing of an order. It is not designed to be answered, denied, or traversed, so as to arrive at issues. It neither broadens nor narrows the scope of the court's function in the case. It does not, without more, call upon the court to decide whether a complaining party is entitled to any equitable relief. *Ruley v. Hyland*, 77 Md. 487, 26 A. 1038 (1893).

In the case before us issues between the assignee and the mortgagor arose, not with the filing by the assignee of an order to docket, but when Mrs. Stradley, the mortgagor, filed her petition to enjoin the foreclosure. In her petition she alleged, under oath, that she had "made the payments as required under the mortgage when due every month", and that she was "not in default or arrears on said mortgage".

Maryland Rule W76 b 2 prescribes what must be alleged in a petition to enjoin a foreclosure sale. While Mrs. Stradley's allegation that she was not in default appears to have been made in the context of monthly payments, it must be read to be as broad as the Rule requires. As a general allegation by the mortgagor of no default, it permitted a showing by the assignee of any default under the mortgage, without any

requirement that it be previously pleaded. Mrs. Stradley herself provided the evidence to show a breach of her covenant to pay taxes.

The chancellor erred when he concluded that the assignee's order to docket stated and limited the issues, or was required to do so. He should have considered whether the failure to pay taxes when due was a breach of a covenant in the mortgage.

Long ago the Court of Appeals held that breach of a covenant in a mortgage or deed of trust to pay taxes when due is a default which permits acceleration of the secured debt, and sale of the encumbered property by foreclosure. *Gustav Adolph Build. Asso. v. Kratz,* 55 Md. 394 (1881); *Condon v. Maynard,* 71 Md. 601, 18 A. 957 (1889).

In 3 Jones, *Law of Mortgages of Real Property,* § 2303 (8th ed. 1928), the author says:

> "The payment of taxes may be made a condition, for breach of which foreclosure may be had. Where a mortgage contained a power of sale authorizing a sale for any breach of conditions, and there was a breach of the condition to pay taxes and assessments, the fact that the principal debt and interest are tendered or paid to the mortgagee does not defeat or render invalid the power of sale. The assignee of a mortgage may exercise the power of sale for a default in the payment of taxes occurring before the assignment."

The Court has consistently applied the same view. In *Stewart v. McCaddin,* 107 Md. 314, 68 A. 571 (1908), the lower court enjoined foreclosure of a mortgage, but the Court of Appeals said that it was error to have restrained the sale, because there were two clear defaults. One was failure to pay the interest when due, and the other was failure to pay the taxes.

Foreclosure for breach of a covenant to pay taxes when legally demandable was held in *Lotterer v. Leon,* 138 Md. 318, 113 A. 887 (1921), to have been erroneously enjoined below, even when the taxes were promptly paid after notice. Rejecting an argument that equity should not permit

enforcement of the default for the purpose of oppression, the Court said, at 328-29:

> "Upon the failure of a mortgagor . . . to pay the taxes within the time required by the mortgage, the mortgagee has the right to treat the whole mortgage debt as due, or to waive the default, and there is no legal or equitable principle upon which his right to so elect can be made to depend upon the motive prompting his election."

Rather than the basic question of the right to foreclose for breach of a covenant to pay taxes, most of the cases have involved questions of when a tax is due and payable, or legally demandable, or in default. *Findlay v. Darnall*, 143 Md. 291, 122 A. 247 (1923), is an example. Such questions were answered quite clearly by the Court of Appeals in *Nylen v. Geeraert*, 246 Md. 4, 226 A. 2d 878 (1967), when it said, at 12:

> "Where the deed of trust (or mortgage) contains a provision substantially like the one before us (using the word 'default') we think, as our predecessors seem to have suggested, that the obligor (or mortgagor) is in 'default' in respect of the payment of taxes if he allows them to remain unpaid after 1 October, the day they begin to bear interest."

Non-payment of taxes, as a breach of a mortgage or deed of trust covenant, was again held, in *Fontana v. Walker*, 249 Md. 459, 462, 240 A. 2d 268, *cert. denied*, 393 U. S. 927, 89 S. Ct. 262, 21 L.Ed.2d 263 (1968), to be a default the day the taxes begin to bear interest.

As in several of the earlier cases, both the degree and the duration of the default in the case now before us seem small indeed, when compared with the harshness of foreclosure. The chancellor below in *Nylen v. Geeraert, supra,* made such a comparison, and could not bring himself to deny an injunction. The Court of Appeals said, at 12-13:

> "One can share his sympathy for the plight of the appellees but one cannot disregard the rights of the

appellants, however strict and uncompromising their attitude may be."

The Court then quoted from its opinion in *Doeller v. Mortgage Guarantee Co.*, 166 Md. 500, 171 A. 856 (1934), where it said, of an interest payment made three days late:

"The appellant contends, and we think properly, that, if the mortgagor delayed paying the interest beyond the day on which it became due and payable, the entire mortgage debt became due and payable, and that the length of the delay was not material. *Wiltsie on Foreclosure of Mortgages*, sec. 43; 41 C. J. 845. For, if the default existed at all, it was by the agreement of the parties a complete, indivisible, and consummate thing, and unless affected by the doctrine of waiver, its mere duration would not affect its qualities, incidents, or effect. While the strict enforcement by the mortgagee of the rights flowing from it may appear, and, indeed, may be, harsh and oppressive, that consideration cannot be regarded as material in such a proceeding as this, where the default rests upon the deliberate agreement of the parties, where the right to the remedy and the remedy itself are definitely fixed by statute, and where the duty of the court to recognize the remedy and the mortgagee's right thereto is mandatory."

Because Mrs. Stradley, the mortgagor, had failed to pay the taxes when due, the mortgage held by Mr. and Mrs. Saunders was in default when the foreclosure proceeding was commenced. The court should not have enjoined the assignee from foreclosing. We shall reverse the decree, and remand the case for entry of an order dismissing the petition to enjoin the sale, after which the assignee may proceed with foreclosure.

*Decree reversed.*
*Case remanded for entry of an order dismissing petition to enjoin sale.*
*Appellee to pay costs.*