566 A.2d 780

**PACIFIC MORTGAGE & INVESTMENT GROUP, LTD.**

v.

**Joseph B. LaGUERRE, et ux.**

**No. 404, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 5, 1989.

Timothy F. Umbreit, Towson, for appellant.

Jeffrey C. Hines, Baltimore, for appellees.

Argued before MOYLAN, WENNER and CATHELL, JJ.

CATHELL, Judge.

This case involves an appeal by Pacific Mortgage & Investment Group, Ltd. (the mortgagee) from an order of the Circuit Court for Baltimore City (Thomas Ward, J.), which granted an interlocutory injunction enjoining the foreclosure of a mortgage held by the mortgagee on four parcels of real property located within Baltimore City.

The mortgagee submits the following questions for decision on this appeal:

1.  Whether the [trial] judge erred in finding [that] the Statement of Mortgage Debt was incorrect;
2.  Whether the [trial] judge erred in finding that the foreclosure was defective because the notice pursuant to Rule W74 a 2(c) was not filed with the [c]ourt at the time of the [injunction] hearing;
3.  Whether the [trial] judge erred in granting the injunction when there was no insurance on the properties as required by the mortgage;
4.  Whether the [trial] judge erred in finding that the payments were not in default under the mortgage;
5.  Whether the [trial] judge erred in finding that the tender of the payments by [the mortgagors] on January 17, 1989 which were mailed back to [them] on January 18, 1989 constituted an acceptance and reinstatement of the mortgage.

On July 23, 1986, Joseph and Gwendolyn LaGuerre (the mortgagors) executed, in favor of the mortgagee, a mortgage on four parcels of improved realty [1] to secure payment of the sum of $42,000 which had been advanced to the mortgagors by the mortgagee. Under the terms of that agreement the mortgagors agreed to pay, on the first day of each month, monthly payments of principal and interest in the amount of $756.79 until the entire debt was paid. If

---

1.  The mortgaged properties, which are all located in Baltimore City, are known as 1504 Lakeside Avenue, 225 North Collington Avenue, 1910 E. Madison Street and 1816 North Register Street.

any of the monthly payments of principal and interest were more than 15 days delinquent, the mortgagors agreed to pay a late charge of 5% of the total amount of the delinquent payment.

Among the covenants made by the mortgagors was a covenant to keep the buildings on the property insured against loss by fire or other hazard. The mortgagors also assented to the passage of a decree for the sale of the mortgaged property upon default of any of the covenants contained in the mortgage.

On January 13, 1989, the mortgagee, through its counsel, filed a petition for foreclosure together with a certified copy of the mortgage, a statement of mortgage debt, a non-military affidavit and an unsigned order. The petition alleged, without explanation, that the mortgage was in default. On January 25, 1989, the order authorizing the sale of the property was signed. Jacob Fraidin was appointed trustee to make the sale.

The sale of the mortgaged property was scheduled to be held on February 17, 1989. On February 6, 1989, the mortgagors filed a petition for injunction pursuant to Rule W76 b in an effort to enjoin the scheduled sale. In the petition, the mortgagors conceded that the mortgage payments for the months of December 1988 and January 1989 were delinquent. They alleged, however, that the delinquent payments were tendered to and accepted by the mortgagee on January 17, 1989. The mortgagors, therefore, alleged that because the payments had been made, the mortgage was not in arrears.

A hearing on the injunction was held on February 16, 1989. Mr. Joseph LaGuerre, one of the mortgagors, and Jacob Fraidin, the trustee, were the only witnesses who testified. Testimony and the argument of counsel at the hearing centered on three areas of dispute: whether the mortgagee had accepted payment of the delinquent installments tendered by the mortgagors; whether the mortgagors were in default of the covenant to pay taxes when due;

and whether the mortgagors were in default of the covenant to keep the property insured. The issue concerning non-payment of taxes need not be addressed since it is not raised by appellant on appeal.

Mr. LaGuerre testified that on Friday, January 13, 1989, he went to the office of the mortgagee on three separate occasions in an attempt to pay the delinquent installments. The office was closed. He telephoned the office on Saturday January 14 but no one answered. The following Monday was a legal holiday. He again telephoned the office and received no answer.

He then testified on direct examination that on Tuesday, January 17, he again visited the office of the mortgagee. The office secretary was present. He told the secretary that he wished to pay the delinquent December and January payments, plus late charges. The secretary left the room to speak to Mr. Fraidin on the telephone, returned, and told him that she was "going to keep his money order." LaGuerre then spoke to Fraidin on the telephone. He testified that Fraidin told him the payments were late, but to leave the money with the secretary.

On cross-examination, LaGuerre denied that a fire had damaged one of the mortgaged properties as the mortgagee had alleged. He admitted, however, that none of the properties were, as of the date of the hearing, insured against loss by fire or any other hazard.

Mr. Fraidin testified that he informed LaGuerre during the January 17 telephone conversation that he could not accept a reinstatement of the mortgage, as the properties were already in foreclosure. He further testified that on January 18 he had a conversation with LaGuerre's attorney, during which the subject of entering into a stipulation for the reinstatement of the mortgage was discussed. Fraidin also testified that he mailed the money orders back to LaGuerre on January 18. The money orders were apparently lost in the mail, as they were never found.

The trial court found both that the mortgagee had accepted the tender of payment by the mortgagors, and that the mortgage was not in default. Additionally, the trial court found that the foreclosure proceeding itself was defective because the statement of mortgage debt was incorrect and the affidavit required by Rule W74 a 2(c) had not been filed. The interlocutory injunction was granted.

### I and II

▮ The statement of mortgage debt, filed under oath on January 13 by the mortgagee's attorney, indicates that interest in the amount of $1,382 was due and owing as of January 10. The trial judge determined that this figure was incorrect because "the only interest due, at the time that the mortgage foreclosure was instituted, was for the month of December and ten days of January, and that the figure of $1,382, which exceeds principal and interest for the same period involved, obviously is incorrect...."

It is unnecessary for us to determine whether the $1,382 interest calculation is correct. Even assuming that the figure is incorrect, that error would not constitute grounds for enjoining or setting aside the foreclosure sale. "If the statement [of debt] is erroneous in not showing the true balance due upon the mortgage, it is open to correction, when the account may be stated by the auditor; but furnishes no reason for setting aside the sale." *Md. Perm. Ld. & Bld. Soc. v. Smith*, 41 Md. 516, 522 (1875). *See also* Ginsberg & Ginsberg, *Mortgages and Other Liens In Maryland* 400 (1936).

The above-quoted legal proposition holds true today, as we still follow the same basic procedure with respect to foreclosure sales. Following a sale by foreclosure, Rule W74 e. requires compliance with Rule BR6, "except that an audit is mandatory." Therefore, the proceeding must be referred to a court auditor pursuant to Rule 2–543 to state an account. The auditor must, of necessity, determine the amount that is due and owing under the mortgage in stating the account. If the auditor's determination of the

amount due is disputed, exceptions may be filed pursuant to Rule 2–543(g). Accordingly, it was clear error for the trial judge to find, at that early stage of this case, that the statement of mortgage debt was incorrect.

██ Rule W74 a 2(c) required the trustee in this action to send notice of the sale, by certified mail, to the mortgagors at their last known address. The Rule also requires that the notice be sent "not earlier than thirty days and not later than ten days before the date of sale," and that the notice must contain the "time, place, and terms of sale." To ensure compliance with the notice requirements, the Rule further requires that:

> The person giving the notice shall file in the proceedings a return receipt or an affidavit that the provisions of this paragraph have been complied with. *Where such filing is made before final ratification, failure of the mortgagor to receive the notice shall not invalidate the sale.* [emphasis added]

The foreclosure sale in the case sub judice was scheduled to occur on February 17, 1989. If the sale had not been enjoined, an order of final ratification could not have been passed until at least March 20. See Rule BR6 b. The trial court found that the foreclosure proceeding was defective because the affidavit required by Rule W74 a 2(c) had not been filed. This finding was made orally at the hearing on February 16 and later reduced to writing on February 28. The affidavit was filed by the mortgagee on February 6, but apparently had not been placed in the court file at the time of the hearing. Even if the affidavit had not been filed prior to the hearing, it is clear that the trial court's finding of a defect in the foreclosure proceedings on this ground was clearly erroneous at that stage of the case.

We cannot say that the granting of the injunction in part upon the erroneous finding that the foreclosure proceeding was defective because the affidavit was not filed and the statement of mortgage debt was incorrect was not prejudicial to the mortgagee, *see Harris v. David S. Harris,*

*P.A.*, 310 Md. 310, 319, 529 A.2d 356 (1987), especially when, as here, that error contributed to the halting of a duly scheduled foreclosure sale. For that reason and, more importantly, for those reasons that follow, we shall reverse.

### III

■ At the hearing below, the mortgagors admitted on cross-examination that the mortgaged properties were uninsured at the time of the filing of the petition for foreclosure, and in fact were uninsured on the day of the hearing. The trial court acknowledged the existence of the lack of insurance in its decision, but rejected consideration of the breach of that covenant as a ground for default, stating:

> Now, the second thing, that is obvious to me and obvious to you, is that no [insurance] had been placed on this property for years.

> Now, I checked to see whether or not you included that in your account, as attached to your foreclosure, and you did not. So you weren't claiming the insurance ... as a result of your statement of mortgage and debt.

> \* \* \* \* \* \*

> All right. Now, neither the petitioner [sic], nor any other part of the file, indicates anything in default, other than the monthly payments.

As the mortgage in question does not require the mortgagee to pay the insurance premiums in the event that the mortgagor fails to do so, and indeed the mortgagee did not pay the premiums, it was completely unnecessary, and in fact would have been improper for the mortgagee to claim the premiums on the statement of mortgage debt filed in this action. Rule W 72 d requires the mortgagee to file, under oath, "a statement of the mortgage debt remaining due and payable." Obviously, if the mortgagee had not advanced the premium payments, it could not claim such payments as a part of the mortgage debt.

The issue to be resolved then becomes whether it was necessary for the mortgagee to allege specifically the default of the covenant of insurance in its petition in order to proceed to foreclose on that ground under an assent to a decree. We note, at the outset of our discussion that the petition filed by the mortgagee stated merely that "[t]he [m]ortage is now in default." The trial judge apparently relied on the amount claimed for late charges in the statement of debt when he stated that "neither the petitioner [sic], nor any other part of the file, indicates anything in default, other than the monthly payments."

Foreclosure pursuant to an assent to a decree was originally enacted as a public local law pertaining solely to Baltimore City by the Act of 1833, Chapter 181. Later codified in the Code of Public Local Laws (1930), Art. 4, § 720, the statute provided:

> In all cases of conveyances of lands ... situate in the said city, wherein the mortgagor shall declare his assent to the passing of a decree for the sale of the same, it shall be lawful for the mortgagee or his assigns *at any time after filing the same to be recorded*, to submit to either of the Circuit Courts of Baltimore City, the same conveyances ... and the Circuit Court to which the same is so submitted, may thereupon forthwith decree that the mortgaged premises shall be sold at any one of the periods limited in said conveyances for the forfeiture of said mortgages or limited for a default of the mortgagors.... [emphasis added]

The statute permitted a decree to be passed *prior* to default, although a sale could not be had until default actually occurred. *Doeller v. Mtge. Guarantee Co.*, 166 Md. 500, 507, 171 A. 856 (1934); *Ginsberg, supra* at 397. "If there has been no default, the decree is entered prospectively. If no default occurs, it never becomes effective...." *Ahrens v. Ijams*, 158 Md. 412, 418, 148 A. 816 (1929). It is obvious that if the decree was entered prior to default, the nature of the default could not possibly have been identified in the petition.

A foreclosure pursuant to an assent to a decree was instituted "by filing a petition asking for the decree." *Ginsberg* at 398. The proceeding was described as being an *ex parte* one, until after the decree and sale under the decree. To obtain the decree it is only necessary to file the mortgage and a petition praying for a decree; no summons is necessary and no notice is required to be given to anyone, whether the mortgagor or a person claiming under him. The statute provides a summary mode of reaching a decree by dispensing with the subpoena and answer.

Miller, *Equity Procedure* § 476 (1897).

In 1950, the General Assembly passed legislation for the purpose of "combining and standardizing the procedure of the foreclosure of mortgages in Baltimore City and the counties of this State." 1950 Md.Laws Ch. 12. This legislation made available the assent to a decree foreclosure remedy throughout the State, codified at Maryland Code (1951), Art. 66, § 6. Although the exact wording of the statute had been changed over the preceding years, a decree could still be obtained prior to default. *See Better v. Williams*, 203 Md. 613, 616–17, 102 A.2d 750 (1953).

In 1962, the Legislature repealed Art. 66, § 6. 1962 Md.Laws Ch. 36, § 1. The assent to a decree foreclosure remedy was, however, then provided for by inserting it in Maryland Code (1957, 1962 Supp.), Art. 66, § 5(a). This statute combined the power of sale and assent to a decree remedies into one code section, and provided for the sale of property pursuant to a power of sale or an assent to decree, provided, of course, that the mortgage instrument gave such authorization.

That statute, which is remarkably similar to Maryland's present statute on the subject, located in Maryland Code (1988 Repl.Vol.), § 7–105(a) of the Real Property Article, clearly indicated that a mortgagee could no longer obtain a decree for sale prior to a default in the mortgage. We must next focus on whether this change in the law now

requires the petition to set forth specifically the alleged default. Prior to the change it was unnecessary. We have been unable to discover any legislative history that is helpful on this subject.

The trial court refused to consider the default for failure to insure the properties because that particular default was not specified in the petition or the statement of debt. In doing so, the trial court evidently viewed those documents as pleadings and found them to be at variance with the proof offered at the hearing. Therefore, the court apparently barred the relief since it felt the allegata did not correspond with the probata.

A foreclosure action pursuant to an assent to a decree is commenced by filing a petition to foreclose, together with the original or a certified copy of the mortgage. Rule W72 c 2. It is not necessary to serve the opposing party with process, that the opposing party file an answer, or that a hearing be held. Rule W72 e. The proceeding, at *least* to the point of obtaining the decree for sale, is entirely ex parte.

A pleading is defined in Rule 1–202(r) as a "complaint, a counterclaim, a crossclaim, a third-party complaint, an answer, an answer to a counterclaim, crossclaim, or third-party complaint, a reply to an answer, or a charging document as used in Title 4." It is noted that "pleadings," when filed, have the effect of framing the issues between the parties which require decision by the court. A petition for foreclosure filed pursuant to an assent to a decree produces no such effect. The petition does not raise issues between the parties in need of resolution, as only one party, the mortgagee, is before the court. Prior to the sale issues may be raised, if raised at all, only through the filing by the mortgagor of an action to enjoin the sale pursuant to Rule W76 b.

We were faced with a similar issue in *Saunders v. Stradley*, 25 Md.App. 85, 333 A.2d 604 (1975). *Saunders* involved a foreclosure pursuant to a power of sale. The

order to the clerk to docket the suit stated that the mortgage was in default due to non-payment of principal and interest. The mortgagor sought an injunction to enjoin the sale. At the hearing, the trial court found that the payments were not in default, and enjoined the sale, in spite of the fact that the evidence demonstrated a default in the payment of taxes. We held that an order to docket is not a pleading, since it does not raise issues between the parties, and therefore the trial court should not have raised the variance between the order to docket and the proof as a bar, as it was unnecessary for the order to docket to contain *any* factual allegations. *Saunders* at 95, 333 A.2d 604.

We find the reasoning behind our holding in *Saunders* to be equally applicable to the case sub judice. A petition for foreclosure, like an order to docket, "is not designed to be answered, denied, or traversed, so as to arrive at issues." *Saunders* at 95, 333 A.2d 604. Process is neither issued nor served upon the opposing party. The change in the law merely affected the time when the petition could be filed, but affected neither the substance of what must be contained in the petition, nor the procedure governing disposition of the petition once it was filed. Accordingly, the change in the law does not require the petition to allege specifically the particular covenant claimed to be in default, as the petition, like an order to docket, is not a pleading.[2]

In the case sub judice, as in *Saunders,* issues arose between the parties upon the filing of the petition for injunction. In their petition, the mortgagors alleged under oath that the mortgage was not in arrears, referring to the monthly installment payments. Under the facts of this case, Rule W76 b 2(2)(ii) is applicable. That Rule requires the petitioner to allege under oath that there is no default in the mortgage before an injunction can be granted. We

---

2. We note, without specifically deciding this matter, that the allegation of fact contained in the petition at issue here would perhaps be sufficient to demonstrate the mortgagee's entitlement to relief under Rule 2–303(b). If so, the allegata and probata were not at variance.

shall therefore read the petition, as we did in *Saunders*, as broadly as allowed. Since the mortgagors have thus generally alleged that there was no default in the mortgage, the mortgagee was permitted to counter by showing *any* default. Therefore, the trial court erred when it refused to find that the mortgagors' failure to insure the properties was a breach of the mortgage covenant.

There is no question that the breach of a covenant to insure contained within a mortgage constitutes a default which allows acceleration under an acceleration clause. Long ago, the Court of Appeals so held in *Walker v. Cockey*, 38 Md. 75 (1873). The mortgagors also appear to accept this legal premise as they do not argue otherwise.

The mortgagors argue for the *first* time on appeal, however, that the mortgagee waived its right to accelerate the mortgage debt for a breach of the covenant to insure. The mortgagors, in asserting their waiver argument, rely on covenant (1) of the mortgage which provides that the mortgagor shall pay to the mortgagee, in addition to the monthly payments of principal and interest, installments equal to one-twelfth of the yearly insurance premiums. The mortgagors *now* claim that since the mortgagee never requested them to pay these installments directly to it, the breach of the covenant to insure contained in covenant (3) was waived.

In the case sub judice, the mortgagors had the burden of proving either that no default existed or that the mortgagee waived the right to foreclose upon default. The mortgagors failed at the trial court to offer any evidence as to the issue of waiver, hence the issue was neither raised nor decided below. Accordingly, we will not decide the issue on appeal. Rule 8–131(a).

We hold that when a petition to foreclose a mortgage pursuant to an assent to a decree is filed, stating simply that the mortgage is in default, such petition is sufficient to sustain the foreclosure proceeding so long as any one of the provisions of the mortgage, the violation of which can constitute a default under the terms of the

mortgage, is in default. Upon any pre-sale challenge to the mortgage foreclosure by petition for injunctive relief, the mortgagee is permitted to offer proof of default of any of the default provisions of the mortgage, and generally the sale may not be enjoined unless it is determined that none of the pertinent provisions of the mortgage are in default. The inclusion in the petition to foreclose of the required statement of mortgage debt in no way limits the mortgagee's allegations of default to claimed payment delinquencies.

█ The trial court erred when it enjoined the foreclosure sale, since the covenant to insure was in default at the time of the commencement of the foreclosure proceeding. We shall reverse the decision of the trial court and remand the case for entry of an order dismissing the petition for injunction. This reversal eliminates the need to address the remaining issues, as those issues would not affect the outcome of this appeal.

DECREE REVERSED; CASE REMANDED FOR ENTRY OF AN ORDER DISMISSING PETITION FOR INJUNCTION; APPELLEES TO PAY COSTS.