## BUCKLER *v.* DAVIS SAND AND GRAVEL CORPORATION

[No. 3, October Term, 1955.]

*Decided November 7, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edgar A. Wren,* with whom were *W. Gwynn Gardiner* and *Samuel J. De Blasis* on the brief, for appellant.

*Waldo Burnside,* for appellee

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Prince George's County entered March 8, 1955, ordering the appellee to pay certain instalments overdue under a mortgage and the sum of $5,000 without interest, which sum had been conditionally tendered under the mortgage, denying an injunction against the use by the appellee of a certain right of way, and awarding costs to the appellee.

The proceeding was instituted on December 9, 1954, by the filing of a bill of complaint praying that the appel-

lee be ordered to pay what might be found to be due under the mortgage, with costs, or in default thereof "be absolutely debarred and foreclosed of and from all right and equity of redemption in or to said mortgaged premises and every part thereof". The complaint also prayed for an injunction against the use of the right of way, and for general relief.

Exhibits attached to the bill disclosed that on January 31, 1951, the appellant and her husband, Charles Parran Buckler, now deceased, in consideration of $10, conveyed about 25 acres of land out of a larger tract to the appellee, together with a 45 foot right of way along one boundary of the land retained. It was recited that "The above mentioned right of way is granted and conveyed for only so long as the grantee, its successors or assigns, mines the above mentioned property and its or their holdings of adjacent property as a sand and gravel pit. It is intended that upon a failure of the grantee, its successors and assigns, to use the said right of way in conjunction with its or their mining operations for a period of longer than one year then, and in that event, the property of the parties of the first part, their heirs and assigns, shall be unencumbered by said right of way without the necessity of any act on their part to terminate said right of way."

On the same day a note and purchase money mortgage in the sum of about $25,000 were executed by the appellee to secure the balance of the purchase price. The mortgage called for monthly payments of $100 until July 15, 1954, on which date the payments were to be increased to $416.66 per month, with interest at 6% on the unpaid balance. The mortgagor reserved the right to make additional payments, with corresponding abatement of interest. It was provided that if mining operations were commenced before the entire principal and interest were paid the mortgagor would pay $1,000 per acre for all gravel to be removed, said payments to be applied to the principal amount, and releases given to the extent of such payments. At the option of the mortgagor,

monthly payments after July 15, 1954, might be made in the form of a royalty of 5 cents per ton on all sand and gravel shipped from the premises "or from the adjoining property controlled by the" mortgagor, said payments not to be less than $416.66, plus interest. The exact language of the deed relating to the right of way was repeated in the mortgage. The mortgage contained the usual acceleration clause, maturing the whole obligation upon default in any covenant or condition, and authorizing a sale by the mortgagees in the event of a default to satisfy the "debt, interest and all costs incurred in making such sale". The mortgage did not contain an assent to the passage of a decree.

On May 29, 1951, the appellee reconveyed to Mr. Buckler about 2½ acres of the land previously conveyed to it. Some contention was raised in the answer that it should have received credit for this on the mortgage to the extent of some $2,500, but the point seems to have been abandoned. On July 9, 1951, the appellee acquired title from William F. Goddard and wife to a tract of land conceded to be physically adjacent to the tract acquired from the Bucklers. Mining operations were regularly conducted on both of these tracts but there were no payments made on account of the gravel mined. Payments at the rate of $100 per month were regularly made on the mortgage, and in 1952 it was shown that six $500 payments were made on the principal, but no partial releases were executed on account of these payments. In March, 1954, all of the capital stock of the appellee was acquired by a new owner, and a question arose as to whether the appellee had not mined more acreage than the payments represented. It was agreed between counsel for the parties that $5,000 would cover, or more than cover, the discrepancy. Accordingly, a check in this amount was delivered to the attorney for the appellant and deposited by him in a special account. However, it appears that the delivery of this sum to the appellant was conditioned upon the execution by the appellant of a new deed of the right of way conveying a free simple

title. Such a deed was not forthcoming, and the money in the special account was not transferred to the appellant, nor was it returned to the appellee. The payments of $100 per month were continued through 1954, but the increased payments called for by the mortgage beginning July 15, 1954, were not made. The appellee claims that this was not due to inability to pay, but to oversight or mistake on its part.

The bill of complaint relied upon a default in the covenant to make the increased payments called for in the mortgage, and upon a default in the covenant to make payments in relation to the acreage mined, which it contends was not cured by the conditional payment of the $5,000 referred to. The bill also alleged that the right of way became extinguished and terminated "prior to the 21st day of December, 1953, at which time they had ceased and terminated the mining operations on their adjacent land for a period of over one year." The appellee filed a demurrer to the bill which was later withdrawn and an answer filed, reserving the points made by the demurrer. The answer also contained a tender of the overdue payments at the increased amounts, with interest to date. The case was not heard on demurrer or upon bill and answer, but came on for hearing in due course and testimony was taken in open court. The Chancellor did not refer to the demurrer in his opinion.

The appellee seems to contend that the bill praying a strict foreclosure without reference to a sale was deficient in form, or at least did not properly invoke the acceleration clause. We find no merit in these contentions. If we assume, without deciding, that the demurrer is properly before us, we think the bill stated a good cause of action. In *Austraw v. Dietz,* 185 Md. 245, the evolution of the procedure to foreclose a mortgage in Maryland was traced, and it was noted that the procedure by way of strict foreclosure was outmoded in view of the availability of a simpler and more convenient statutory remedy. But in the instant case there was a prayer for other and further relief and the court was not pre-

cluded from applying the statutory remedies. The bill alleged that "the amount of the payments have been substantially less than the sums provided under the terms of the aforesaid mortgage and thus the entire mortgage became due and payable, demand having been made for the full payment thereof". It is well-settled that a bill to foreclose will lie and an acceleration clause will be given effect upon a breach of the contract, even though the default is due to oversight or mistake. Cf. *Better v. Williams,* 203 Md. 613, 617 and *Doeller v. Mtge. Guarantee Co.,* 166 Md. 500, 507.

It is well-settled that a tender of the whole amount due will prevent a foreclosure sale, even though the bill based on the default is properly before the court. *Better v. Williams, supra.* But in the instant case the appellee only tendered the unpaid balance of the payments then overdue. We think the Chancellor was in error in declining to give effect to the acceleration clause as maturing the entire obligation by reason of the failure to make the increased payments and the failure to make an unconditional tender of the $5,000 that was conceded to have been due. We find no error in ordering the payment of the amount of the increased payments tendered, and the payment of the $5,000, but we find no basis upon which to support the disallowance of the interest upon the $5,000 subsequent to the conditional tender. Neither the failure of the appellant to agree to a condition that was not demandable as a matter of legal right, nor the failure of her attorney to return the money, under the circumstances of this case, would preclude her from asserting a claim for interest that was legally demandable.

The appellee filed in this Court a motion to dismiss "so much of this appeal as relates to the default of the appellee under the terms of the mortgage", and an affidavit that payment of the overdue balance of the increased payments was made and credited on the note on March 4, 1955, that payments in the increased amounts were regularly paid and credited on the note subsequent to the date of the decree and that an unconditional offer

to pay the $5,000 with interest was also made subsequent to the decree, which, if accepted, will satisfy the entire mortgage debt with interest. The allegations of the affidavit are conceded to be true, and it is suggested that the case is moot so far as these matters are concerned. It may well be that the acceptance of the subsequent instalments effectively removes any controversy concerning them from the case. But the offer to pay the $5,000 with interest was not accepted, and under all the circumstances we think the decree should be modified to provide for payment of the whole unpaid balance of the mortgage with interest, and the motion for a dismissal of the appeal in part should be denied. In so holding, we do not suggest that such relief would be necessarily inappropriate in a proper case, where the issues involved are clearly separable. In the instant case the controversy as to the foreclosure is intermingled with the controversy as to the right of way, and the offer to pay the $5,000 with interest appears to be little more than an admission that the decree was deficient in this respect.

The appellant contends that the default in the mortgage worked a forfeiture of the right of way. But this right was created by the deed and merely incorporated in the mortgage without any language prescribing a forfeiture. The only limitation upon the use of the right of way in either document was that it should revert upon failure to use it in conjunction with the mining operations of the grantee for a period of longer than one year. Testimony produced by the appellant established that the Buckler tract was mined as late as January, 1954, whereas the bill was filed on December 9, 1954. Testimony produced by the appellee was to the effect that there was mining on the Buckler tract as late as April, 1954, and established that mining operations on the Goddard tract were conducted as late as July, 1954. Clearly the appellant failed to prove its case, even as to the Buckler tract, and we find it unnecessary to decide whether the mining upon the Goddard tract was fairly

within the contemplation of the parties. The denial of the injunction must be affirmed.

The appellant finally contends that the Chancellor erred in failing to award costs to the appellant in the court below. It is a general rule that the award of costs in an equity court is discretionary and not appealable, and that an appeal will not lie where only costs are involved. *Velasco v. P. E. Church in Maryland,* 200 Md. 634, 640. The rule would not seem to be applicable where the obligation to pay costs arises out of a contractual undertaking in the covenant of a mortgage. Cf. *Better v. Williams, supra,* and cases cited. But it may be noted that the covenant, in the instant case, was apparently limited to the costs of making a sale. It is also the general rule that costs fall upon the losing party, but this Court has a wide discretion as to costs below, particularly where the decree is reversed or modified, or the case is remanded. See Code (1951), Art. 5, sec. 71; *Griffith v. Fred. County Bank,* 6 G. & J. 424; *Sellers v. Zimmerman,* 21 Md. 355. If we assume, without deciding, that the question is properly before us, we are not disposed to disturb the award of costs below. The Chancellor's decision in the injunction matter was entirely correct, and it would be difficult to separate the costs incident to that determination and the partial relief granted in the foreclosure matter.

The question of costs in this Court presents a somewhat different question. It has been held that where a controversy is rendered moot by the action of a party subsequent to an appeal, such party may properly be charged with the costs. *Alleghany Corp. v. Aldebaran Corp.,* 173 Md. 472, 480. Since we have found that the dercee was deficient in several respects, we think the costs of appeal should be divided between the parties.

> *Decree modified as indicated in this opinion, and, as modified, affirmed. Costs in this court to be divided between the parties.*